[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 29, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-10536

_____

D.C. Docket No. 05-00153-CV-DHB-1

TRACY ANTHONY MILLER,

Plaintiff-Appellant,

versus

COMMISSIONER JAMES DONALD,
GEORGIA DEPARTMENT OF CORRECTIONS,
Georgia, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(August 29, 2008)**

Before TJOFLAT, BLACK and EBEL,[*] Circuit Judges.

_____

[*]Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

TJOFLAT, Circuit Judge:

Tracy Anthony Miller is an inmate in the Georgia prison system. He is a frequent litigant, as plaintiff, in the federal courts in Georgia. Since 1992, proceeding pro se and in forma pauperis, he has filed at least thirty cases in district court and has taken nearly as many appeals to this court. The defendants in these cases are, for the most part, officials of the Georgia Department of Correction. In the case now before us, he has sued in the Southern District of Georgia the Commissioner of the Department of Correction and various Department officials (collectively "Commissioner") under 42 U.S.C. § 1983, seeking relief for their continuous infringement of his rights under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

On receiving Miller's complaint, the district court, acting sua sponte, took note of the law suits Miller previously has brought against Department of Correction officials, examined the complaint's factual allegations and concluded that they were frivolous, and dismissed the complaint without prejudice under 28 U.S.C. § 1915(g).[1] In its order of dismissal, the court, in an effort to curb Miller's

---

[1] The district court adopted in full the recommendation of the magistrate judge to whom Miller's complaint had been referred.

litigious activity, enjoined Miller from submitting further filings with the court, except in limited circumstances, without paying the unpaid filing fees he has accrued.[2]  Miller now appeals.  We reverse the district court's dismissal of Miller's complaint, vacate the injunctive provision of the court's order regarding future filings, and remand the case for further proceedings.

I

At the time he filed his complaint in this case, Miller was incarcerated in the Augusta State Medical Prison ("ASMP").  His complaint alleges in substance that the officials at ASMP failed to make adequate accommodations for his physical limitations.  He is a paraplegic confined to a wheelchair, and as a result of his immobility, he was and continues to be subjected to physical harm.  The officials also failed to make accommodations for his aliments.  They essentially ignored his kidney condition, which requires catheter treatment and medication, and his chronic high blood pressure, which requires medication.  As an example of the officials' disregard of his physical condition, the complaint alleges that the officials confined him for twenty-four hours a day in a cell too small for his wheelchair to move and denied him accessible toilets and urine catheters, thereby

_____

[2]  The unpaid fees amount to $1,329.

3

forcing him to lie in his own bodily waste.[3]

Miller lacked the means to pay the $250 fee for filing his complaint, so he sought leave to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915. Section 1915(g), as amended by the Prison Litigation Reform Act of 1995 ("PLRA"), precludes a prisoner from "bring[ing] a civil action . . . under this section if the prisoner has, on 3 or more prior occasions," brought an action that was dismissed either as frivolous or because the complaint failed to state a claim for relief, "unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). It is undisputed that Miller has had enough cases dismissed to fall under this so-called three-strikes provision. See Miller v. Brown, CV 604-100, 2004 U.S. Dist. LEXIS 28397, at *3 (S.D. Ga. Sept. 15, 2004) (listing Miller's qualifying prior cases). In this case, Miller argues that his allegations of imminent physical danger from continuing mistreatment qualifies him for the § 1915(g) "imminent danger" exception.

The district court did not overlook Miller's argument that it should entertain

---

[3] In addition to these allegations concerning conditions of his confinement and inadequate medical care at ASMP, the complaint alleges that prison officials at unnamed facilities knowingly placed him in close proximity to other inmates on his "enemy list," and failed to intervene when he was repeatedly attacked by other inmates. He has been subjected to all of this – at the hands of the Commissioner of the Georgia Department of Correction, the warden, correction officers, medical staff, prosecutors, and judges – because he possesses evidence of official corruption in Georgia's prison system.

his law suit because it fell within the imminent danger exception. After reviewing the cases Miller had previously filed challenging conditions of his confinement in Georgia's prison system, however, the court concluded that Miller was "attempting to use claims of 'imminent danger' as a means to force a shotgun blast of other frivolous and duplicative claims into court." The court observed that allegations of the complaint were nearly identical to the allegations Miller had brought against other Georgia prison officials. Two of those cases, Miller v. King, 449 F.3d 1149 (11th Cir. 2006) and Miller v. Pryor, CV 505-029 (M.D. Ga. Aug. 11, 2005), had advanced beyond the screening phase, had bypassed the § 1915(g) bar, and were still pending. Although King and Pryor concern the conditions at Georgia State Prison and Men's State Prison, respectively, the court determined that Miller's allegations were duplicative of his complaints in King and Pryor.

The provision of the district court's dismissal order that enjoined Miller's filing activity was drawn from a practice invoked from time to time by the Southern District of Georgia to curb filing abuses in prisoner cases. With three narrow exceptions, a prisoner is prohibited from filing any new papers with the court under § 1915(g) until he has paid all accrued filing fees. The exceptions are that a prisoner may file (1) papers in a criminal proceedings brought against him by the state, (2) a timely motion for reconsideration of the filing bar as applied,

5

and (3) a pleading or paper demonstrating that he has been denied access to state court and has no recourse except to repair to the district court. Noticeably absent from this list of exceptions is a complaint alleging that the prisoner is under imminent danger of serious physical injury.

## II

Our first task in this appeal is to consider the appropriateness of the filing injunction and then to consider the dismissal of Miller's complaint as frivolous. We review the injunctive provision under the abuse of discretion standard. See Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1096 (11th Cir. 2004).

The propriety of an injunction against IFP filings by a litigant depends on weighing the interest of the court to protect its own jurisdiction to hear meritorious matters against the interest of the IFP litigant presenting his claim for adjudication. Access to the courts is unquestionably a right of considerable constitutional significance, see Bounds v. Smith, 430 U.S. 817, 821, 97 S. Ct. 1491, 1494, 52 L. Ed. 2d 72 (1977), particularly when the individual seeks "vindication of fundamental civil rights," Rivera v. Allin, 144 F.3d 719, 724 n.9 (11th Cir. 1998) (quoting Lyon v. Krol, 940 F. Supp. 1433, 1437 (S.D. Iowa 1996)), including the right "to be free of unwarranted 'imminent danger of serious physical injury.'" Id. at 724 (quoting 28 U.S.C. § 1915(g)). When such fundamental interests are at

stake, the litigant's inability to pay the filing fee cannot be a barrier to his access to the judiciary.  See Boddie v. Connecticut, 401 U.S. 371, 374, 91 S. Ct. 780, 784, 28 L. Ed. 2d 113 (1971).

The right of access to the courts "is neither absolute nor unconditional." Cofield v. Ala. Pub. Serv. Comm'n, 936 F.2d 512, 516 (11th Cir. 1991) (quoting In re Green, 669 F.2d 779, 785 (D.C. Cir. 1981)).  Conditions and restrictions on each person's access are necessary to preserve the judicial resource for all other persons.  Frivolous and vexatious law suits threaten the availability of a well-functioning judiciary to all litigants.  As the Supreme Court has noted, filing fees in theory discourage frivolous law suits and thus help allocate judicial resources to more meritorious cases.  See In re McDonald, 489 U.S. 180, 184, 109 S. Ct. 993, 996, 103 L. Ed. 2d 158 (1989).  "But paupers filing pro se are not subject to the financial considerations – filing fees and attorney's fees – that deter other litigants from filing frivolous petitions."  Id.; see also In re Sindram, 498 U.S. 177, 179, 111 S. Ct. 596, 598, 112 L. Ed. 2d 599 (1991) (directing the clerk of the Court not to accept further IFP extraordinary writ petitions from the petitioner).  Absent monetary cost as a constraint, the sheer volume of frivolous IFP suits threatens to undermine the availability of the federal courts to the public.  To counter such threat and to protect its jurisdiction, the district courts are authorized by the All

Writs Act, 28 U.S.C. § 1651(a), to restrict access to vexatious and abusive litigants. Reimposing financial considerations in the form of filing fees on indigent litigants is one way the courts can fulfill their "constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." Procup v. Strickland, 792 F.2d 1069, 1073 (11th Cir. 1986) (en banc) (per curiam) (quoting In re: Martin-Trigona, 737 F.2d 1254, 1261 (2d Cir. 1984)).

Yet to the indigent, a filing fee is a blunt instrument that cannot discriminate between valid and bogus claims. A blanket injunction that prohibits all IFP filings by a given person would be overinclusive; it would screen out legitimate claims of the indigent, even if these claims concerned fundamental interests. For this reason, Congress has been careful to tailor limitations on IFP filings to minimize the exclusion of valid claims that involve fundamental interests. In the context of prisoner litigation, Congress was deliberate in leaving an exception for claims of imminent threat of serious physical injury when it enacted the three-strikes provision that screens out all other IFP suits as part of the PLRA. See 28 U.S.C. § 1915(g). Likewise, when exercising their inherent powers, courts have made sure that indigent litigants are not completely prohibited from seeking judicial relief. See, e.g., Procup, 792 F.2d at 1074 (vacating an injunction that prohibited

8

filings by indigent prisoner without an attorney and holding that litigants "cannot be completely foreclosed from any access to the court."); cf. Copeland v. Green, 949 F.2d 390, 391 (11th Cir. 1991) (per curiam) (reversing district court's order banning IFP litigant from delivering documents to the courthouse because it is "impermissibly restrictive of his right of access to that court").

Designing an acceptable procedural device to screen out frivolous IFP filings requires some degree of nuance, and for that reason "[c]onsiderable discretion necessarily is reposed in the district court." Procup, 792 F.2d at 1074. Our opinion in Procup catalogued a wide range of then-state-of-the-art tools that various courts have employed to deal with abusive litigants, see id. at 1072-73 & nn. 2-8 (listing cases and rules), and although Procup is over twenty years old, those acceptable examples still provide guidance for us today. What all of these methods have in common is that they do not impose blanket prohibitions on the litigant. See id. When Procup was decided, we noted that the listed methods of checking abusive litigants was "intended to be neither exhaustive nor limiting," and that "[a]s new ideas develop and old devices prove ineffective, the judiciary must respond with imaginative new techniques designed to protect the court access of all litigants." Id. at 1073. The method used in the Southern District of Georgia, though novel and undoubtedly effective at keeping out frivolous claims,

exceeds the bounds of discretion that courts in this and other circuits have exercised.

In Cofield v. Alabama Public Service Commission, 936 F.2d 512 (11th Cir. 1991), we addressed a very similar situation involving "an overly litigious fellow" named Sir Keenan Cofield, an inmate in the Alabama prison system. Id. at 513. Cofield's obviously frivolous suits targeted defendants from prison officials to Burger King, Coca-Cola, and AT&T. See id. The district court for the Northern District of Alabama sua sponte dismissed all of Cofield's pending suits and barred him from filing further claims IFP; the court also required Cofield to obtain leave of court before filing any papers even after paying a fee. Id. at 514. On appeal, we agreed with the district court's factual conclusion that Cofield filed his meritless complaints out of spite and vanity. See id. at 516-17. As to the propriety of the court's injunction against Cofield, we affirmed the provision that required Cofield to obtain leave of court before filing, but reversed the provision denying IFP status in all future cases, holding that "[o]ur precedent condemns" the "prospective shutting [of] the courthouse door." See id. at 518.

Other courts of appeals have, in the years since Procup was decided, likewise proceeded right up to the line of prospectively banning all IFP filings by a litigant, but have yet to cross it. For example, in Cok v. Family Court of Rhode

Island, 985 F.2d 32 (1st Cir. 1993), the First Circuit upheld an injunction prohibiting an abusive litigant from removing family court matters to federal court, but vacated the additional sanction prohibiting the litigant from filing any other "unpermitted pro se actions in the district court." Id. at 36. The court emphasized that although "the district court is in the best position to set preconditions on access," id. (citing Procup, 792 F.2d at 1073), the preconditions ought to be "limited to restricting improper conduct of the type which the present record indicates plaintiff has displayed in the past." Id. Indiscriminate prohibitions are too broad. The Sixth Circuit also rejected an injunctive order prohibiting a vexatious plaintiff from "filing any civil lawsuit . . . based upon or arising out of" the underlying suit. Ortman v. Thomas, 99 F.3d 807, 810-11 (6th Cir. 1996) (quoting Ortman v. Thomas, 906 F. Supp. 416, 424 (E.D. Mich. 1995)). The court noted that while sanctions against the abusive plaintiff were appropriate, "[t]he absolute bar to further litigation . . . is too broad." Id. at 811. More recently, the Fourth Circuit vacated an injunction prohibiting a plaintiff from filing any papers without leave of court. See Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 818-19 (4th Cir. 2004). Although not an IFP case, Cromer turned on the same right of access to the courts involved here, and it held that an injunction prohibiting the plaintiff from making "any and all filings" was overbroad. Id. at

11

819. Like the courts in <u>Cok</u> and <u>Ortman</u>, the Fourth Circuit in <u>Cromer</u> also emphasized that prospective filing limitations ought to bear some relationship to the litigant's objectionable actions in pending suits, and cannot be wholesale restrictions on all future filings in unrelated matters. <u>See</u> <u>id.</u>

The injunction against Miller is similarly overbroad. Miller has indeed filed several suits alleging similar core facts, i.e., that officials at three different prisons have failed to provide him with adequate treatment for his medical conditions, and these suits raise a host of additional incoherent allegations of official wrongdoings, real or imagined. Assuming that Miller's claims in this case are frivolous or repetitive, a narrower injunction could target Miller's filings arising from the facts or transactions already raised and litigated in other cases, such as in <u>Miller v. Pryor</u> and <u>Miller v. King</u>.

We took the same approach in <u>United States v. Flint</u>, 178 Fed. Appx. 964 (11th Cir. 2006) (per curiam). In <u>Flint</u>, a criminal case, the district court enjoined Flint from filing any further pleadings or motions after he had inundated the court with papers during his trial and following his conviction. 178 Fed. Appx. at 965. We vacated the injunction as overbroad because it reached beyond the area in which Flint had demonstrated a history of abusive litigation, namely the criminal case itself, and encompassed all unrelated business that Flint might subsequently

12

have with the court.  Id. at 970.  The court's expansive injunction in Flint "improperly infring[ed] on Flint's right of access to the courts."  Id. (citing Procup, 792 F.2d at 1072-73).

The injunction in this case likewise goes beyond what is sufficient to protect the district court's jurisdiction from Miller's repetitive filings related to the conditions of his confinement, and fails to uphold Miller's right of access to the courts.  The three limited exceptions in the injunction, taken together, do not provide Miller with meaningful access.  The first exception permits Miller to file only responsive papers in criminal cases brought against him.  The second exception applies only to a "timely filed reconsideration motion," and obviously Miller may have a valid claim that arises after the ten-day period for moving the court to alter or amend a judgment has elapsed, see Fed. R. Civ. P. 59(e).  The third exception, that Miller can file his complaint if he can demonstrate that he lacks access to the state courts, misses the point that the relevant right in question is access to the federal courts.

The cases the Commissioner relies upon do not support the district court's broad injunction.  First, Sloan v. Lesza, 181 F.3d 857 (7th Cir. 1999), which the Commissioner contends stands for the proposition that courts may bar inmate litigants from filing any further papers with the court until all outstanding court

fees have been paid, is different from Miller's case in an important way. Although the Seventh Circuit's opinion in Sloan does not detail the nature of Sloan's claim, the court expressly stated that he was under § 1915(g)'s three-strikes provision and that he did "not contend that he [was] 'under imminent danger of serious physical injury.'" Id. at 859 (quoting 28 U.S.C. § 1915(g)). Of course, if Sloan did not allege imminent danger of serious physical injury, it follows that § 1915(g) would bar him from filing future cases IFP. The Seventh Circuit's order merely added the provision of paying outstanding court fees as an additional monetary barrier, but it in no way held or even suggested that § 1915(g)'s exception for allegations of imminent danger of serious physical injury no longer applied.

Second, the Supreme Court's decisions banning vexatious litigants from seeking leave to file IFP petitions for extraordinary writs are also inapposite because they "kept at least one door open by allowing . . . [litigants] to file their writs of certiorari, by far the most important doorway to Supreme Court review." Cofield, 936 F.2d at 518; see, e.g., In re Sindram, 498 U.S. at 179, 111 S. Ct. at 597 (writ of mandamus); In re McDonald, 489 U.S. at 180, 109 S. Ct. 993-94 at (writ of habeas corpus). As we discussed in Cofield, petitions for extraordinary writs are treated with skepticism, and "[t]he Court essentially adopted a presumption of frivolity in these cases," a posture that is not proper for Miller's

14

case "because the prospective denial is not limited to his applications for something so rarely granted as an extraordinary writ." Cofield, 936 F.2d at 519.

The Commissioner finally urges us to affirm and validate the practice of issuing these "§ 1915(g)-plus" sanctions because this provision of the PLRA has proven insufficient for managing inmate litigantion. As a general matter, courts should be hesitant to supplement the rules and remedies that Congress provides by statute. The Supreme Court reiterated this view recently in the context of the PLRA when it held unanimously that because the statute does not require inmate plaintiffs to plead that they have exhausted the administrative remedies, courts cannot impose this additional pleading requirement. Jones v. Bock, 549 U.S. 199, __, 127 S. Ct. 910, 921, 166 L. Ed. 2d 798 (2007). The opinion acknowledges that combining the substantive PLRA exhaustion requirement, see 42 U.S.C. § 1997e(a), with an additional pleading requirement would screen out more suits, but also states that there is simply nothing in the language of the PLRA itself that supports the addition of the pleading rule. See Jones, 549 U.S. at __, 127 S. Ct. at 921-22. Likewise, in this case, it is understandable that § 1915(g) as enacted by Congress may not be able to screen out as many frivolous lawsuits quickly enough, yet this perceived deficiency is not an invitation for the district courts to improve upon the statute. See id. at 921. Of course, this is not to say that the

15

PLRA's provisions shackle the district courts' inherent power to protect the courts' own jurisdiction. Rather, it offsets the Commissioner's suggestion – implicit in the very name "§ 1915(g)-plus" – that the district court's injunction does nothing more than execute Congress's purpose in enacting the PLRA, a purpose whose imperfect embodiment in a statute can be corrected by the court's own superior hindsight. The district courts will continue to develop mechanisms that protect their own jurisdiction consistent with their inherent power and limitations, and § 1915(g)'s relatively narrow rule-and-exception pairing neither subtracts from nor adds to them.

### III

We turn now to whether the court erred in dismissing Miller's complaint. The appropriate standard of review to apply is not without some ambiguity. Formally, the district court's order dismissed the complaint without prejudice because it denied Miller IFP status. This implies that the dismissal was pursuant to 28 U.S.C. § 1915(g), which we review de novo. See, e.g., Brown v. Johnson, 387 F.3d 1344, 1347 (11th Cir. 2004). The district court's order refers to Miller's allegations as frivolous, and it is this determination of frivolity that appears to be dispositive. A court's sua sponte dismissals based on frivolity are provided for, and indeed mandated by 28 U.S.C. §§ 1915(e)(2)(B)(i), and 1915A(b)(1), and we

16

review those decisions for abuse of discretion.  See Bilal v. Driver, 251 F.3d 1346, 1348-49 (11th Cir. 2001).  Because it appears that the district court considered the allegations of Miller's complaint frivolous and dismissed the complaint on that ground, we will review the court's decision under the abuse of discretion standard.

A claim is frivolous if and only if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 1831-32, 104 L. Ed. 2d 338 (1989); see also Bilal, 251 F.3d at 1349.  The court's power to dismiss a claim for frivolity differs and in some ways supercedes the power to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Neitzke, 490 U.S. at 327, 109 S. Ct. at 1833.  The PLRA "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  Id.; see also Clark v. Ga. Pardons & Paroles Bd., 915 F.2d 636, 639-41 & n.1 (11th Cir. 1990).  At the same time, we are mindful that "pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003) (quoting Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam)).  Thus, wildly implausible allegations in the complaint should

17

not be taken to be true, but the court ought not penalize the litigant for linguistic imprecision in the more plausible allegations.

The Commissioner's arguments supporting dismissal all condense to the point that the allegations of Miller's complaint are repetitive of the allegations presented in Miller v. King and Miller v. Pryor. This repetition, the Commissioner submits, demonstrates that Miller's complaint clearly "lacks an arguable basis in law or in fact" and thus should be dismissed for frivolity under various sections of the PLRA; alternatively, the complaint evidences Miller's abusive litigation tactics and should be dismissed as an exercise of the court's inherent power to protect its own jurisdiction. Putting aside the question whether mere repetition renders a claim frivolous, we are not convinced that the record in this case shows Miller's claims to be repetitive. As the district court indicated, Miller's allegations about the prison's conditions in this case are strikingly similar to his allegations about prison conditions in King and Pryor, and this similarity may be due to the actual existence of similar conditions in the ASMP. However, Miller also checked the box marked "yes" in the standard prisoner § 1983 form complaint section asking whether the prisoner has begun "other law suits . . . dealing with the same facts involved in this action." The Commissioner would have us interpret this as an admission that the claim in this case wholly duplicates earlier cases. But we do

not hold the <u>pro se</u> complaint to such exacting pleading standards. Read in a more charitable light, the "same facts involved in this action" likely means that the prison conditions at ASMP are the same as those in the other prisons in which Miller had been incarcerated. Because Miller's ADA claim has at least a plausible chance of success, <u>see</u> <u>King</u>, 449 F.3d at 1150, we conclude that it has an "arguable basis in law."

Miller's factual allegations, or at least those making up the ADA claim, are also not so fantastical as to be clearly baseless. The allegations were enough to survive screening in <u>King</u>. There is no new reason to view them more skeptically in this case once we consider that the same conditions that existed in the other prisons that hosted Miller could also prevail in the ASMP.

Finally, we disagree with the Commissioner's argument that Miller's present lawsuit represents abusive litigation warranting dismissal as a sanction. Of course, "the court can consider [the prisoner's history of meritless litigation] in deciding to dismiss a questionable claim." <u>Clark</u>, 915 F.2d at 641. This case raises claims and issues similar to those in the still pending cases of <u>King</u> and <u>Pryor</u>, and we hesitate to characterize those claims as frivolous. <u>See</u> <u>In re Powell</u>, 851 F.2d 427, 431 (D.C. Cir. 1988) (per curiam) ("In making a determination as to the frivolousness of numerous actions . . . the district court should be careful not to

19

review pending cases."). The record indicates that Miller has indeed been repeatedly moved to and from various prisons in Georgia, so one can understand how the allegations in the complaint could be true of different locations. On remand, the district court should consider Miller's ADA claims against the officials for the conditions in ASMP using the same analysis described in King and the Supreme Court's decision in United States v. Georgia, 546 U.S. 151, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006).[4] Moreover, the outlandish ancillary claims – such as they can be made out – that are part of Miller's complaint were properly dismissed as frivolous. The core ADA claims that are also the subject of King and Pryor, however, pass this early threshold.

IV

For the foregoing reasons, the provision of the district court's order dismissing Miller's complaint is REVERSED; the provision enjoining Miller's future filings is VACATED ; and the case is REMANDED for further proceedings.

REVERSED, in part; VACATED, in part; and REMANDED.

---

[4] As mentioned in Miller v. King, 449 F.3d 1149 (11th Cir. 2006), the district court should "determine on a claim-by-claim basis . . . to what extent such alleged misconduct also violates [the Eighth Amendment to] the Constitution." Id. at 1150-51.

BLACK, Circuit Judge, specially concurring:

The district court's injunction flowed from a mistaken finding of frivolity. I would vacate the injunction on that ground alone; therefore, I join in part III of the majority opinion.