[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14341
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-00560-CG-N

SYLVESTER BALDWIN,

Plaintiff - Appellant,

versus

BOISE PAPER HOLDINGS, L.L.C.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(November 18, 2015)

Before MARTIN, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Sylvester Brown, proceeding *pro se*, appeals from the district court's grant of summary judgment in favor of Boise Paper Holdings, L.L.C., in his action for wrongful termination in violation of Alabama law. The district court ruled that Mr. Baldwin's state-law claim was preempted by the Labor Management Relations Act, 29 U.S.C. § 185(a), and had already been the subject of arbitration. After review of the record and the parties' briefs, we affirm.

## I

We assume the parties are familiar with the background of this case. Thus, we summarize the proceedings and facts only insofar as necessary to provide context for our decision.

In October of 2013, Mr. Baldwin filed a *pro se* state-law wrongful termination claim against his long time employer, Boise, in Alabama state court. The following month, Boise removed the case to the federal district court. To establish federal-question jurisdiction, Boise alleged that Mr. Baldwin was represented by Local 1083 of the United Steelworkers Union ("the Union") during his employment with Boise, and that a collective bargaining agreement ("CBA") between the Union and Boise covered termination of employees and provided remedies for employees who felt they had been unfairly terminated. Boise further alleged that Mr. Baldwin, while represented by the Union, had signed a last chance agreement ("LCA") with Boise stating the grounds for which he could be

terminated.  Boise maintained that the case could be removed to federal court because Mr. Baldwin's state-law claim was completely preempted by federal law; its resolution depended on the interpretation of the CBA and LCA, and had already been the subject of an arbitration hearing (at which Mr. Baldwin was present and represented by the Union) resulting in denial of Mr. Baldwin's grievance.  Mr. Baldwin did not oppose the removal and the case remained in district court.

In May of 2014, Boise filed a motion for summary judgment, arguing that Mr. Baldwin's state-law claim was preempted by the LMRA and should be dismissed because resolution of the claim was dependent upon the meaning of the CBA, which had already been the subject of arbitration in March of 2013.  In his response and sur-response to the motion for summary judgment, Mr. Baldwin alleged that the arbitration proceeding had resulted in a different outcome and called into question the authenticity of the arbitral decision offered by Boise.  Mr. Baldwin, however, did not provide contrary evidence.  The district court gave Boise additional time to provide authentication of the arbitration decision pursuant to Federal Rule of Evidence Rule 901 and stated that "[n]o further response [wa]s permitted from [Mr. Baldwin] without the express permission of the court." D.E. 32 at 2 (alternations added).

Within the additional time granted by the district court, Boise submitted a notarized letter signed by the arbitrator, along with another copy of the arbitral

3

decision.   These documents were filed electronically, with the originals being retained by Boise for inspection.   On the notarized letter, the notary had crossed out her commission expiration date and hand-written a different date.   D.E. 33-1 at 2.   Mr. Baldwin made no objection to the authentication submission of Boise.

The district court issued an order concluding that Mr. Baldwin's state-law claim was preempted by the LMRA because the resolution of his claim requiring interpretation of provisions of the CBA and LCA.   The district court further noted that Mr. Baldwin's claim could survive summary judgment if it were treated as a claim under 29 U.S.C. § 185(a), but because Mr. Baldwin had not made such a claim and the claim had, in any event, already been arbitrated, Boise was entitled to summary judgment.   Mr. Baldwin now appeals.

## II

It is generally proper for a party to challenge a federal court's subject-matter jurisdiction at any point within the proceedings.   *See Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) (citing *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).   This Court, in fact, has an obligation to raise the issue of subject-matter jurisdiction *sua sponte*.   *See Boone v. Sec'y, Dep't of Corr.*, 377 F.3d 1315, 1316 (11th Cir. 2004).   Here we review *de novo* whether Mr. Baldwin's state-law claim is completely preempted.   *See Anderson v. H&R Block, Inc.*, 287 F.3d 1038, 1041 (11th Cir. 2002).

4

Although Mr. Baldwin does not specifically challenge the district court's subject-matter jurisdiction in his list of issues on appeal, he includes an argument concerning jurisdiction in his brief. Given that we read Mr. Baldwin's *pro se* brief liberally, *see Timson v. Sampson*, 518 F.3d 870, 874 (11th 2008) ("[This Court] read[s] briefs filed by *pro se* litigants liberally…"), we address the argument.

A civil claim brought in state court may be removed if the federal court has original jurisdiction. *See* 28 U.S.C. § 1441(a). Removal to federal court based on federal-question jurisdiction has long been governed by the well-pleaded complaint rule, which requires a court to look to the face of the plaintiff's complaint in order to determine whether a state-law claim presents a federal question. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908).

The doctrine of complete preemption, however, provides an exception to the well-pleaded complaint rule. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987). This exception allows a state-law claim to be removed to federal court even when the face of the plaintiff's complaint presents no federal question because the preemptive force of certain federal statutes is so strong that their implication in a case can convert a state-law claim into a statutory federal claim. *Id.*

One of these rare preemptive forces can be found in the federal law known as the LMRA. The Supreme Court has held that state-law claims are completely

preempted by § 301 of the LMRA. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).  This provision reads as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (alterations added).

Preemption occurs under § 301 of the LMRA "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract."  *Allis-Chalmers*, 471 U.S. at 220.  So we must decide if the state-law claim is "inextricably intertwined with consideration of the terms of the labor contract."  *Id.* at 213.  But to do that, we must understand the elements of the state-law claim in question.  *See Lightning v. Roadway Express, Inc.*, 60 F.3d 1551, 1557 (11th Cir. 1995).

Here, Mr. Baldwin asserted a state-law wrongful-termination claim against Boise.  Under Alabama law, a claim for wrongful termination is generally not available for at-will employees.  *See Wright v. Dothan Chrysler Plymouth Dodge, Inc.*, 658 So. 2d 428, 431 (Ala. 1995).  If, however, the employment is pursuant to a contract, the employee may have a cause of action for breach of contract.  *See Morrow v. Town of Littleville*, 576 So. 2d 210, 212 (Ala. 1991).  Given that Mr. Baldwin's employment with Boise was governed by a CBA between the Union

6

and Boise, as well as the subsequent LCA, resolution of a breach of contract state-law claim would be substantially dependent upon analysis and interpretation of the terms of those agreements.  Consequently, the district court correctly concluded that Mr. Baldwin's state-law claim was completely preempted by § 301 of the LMRA, and that removal was proper.

## III

Where a state-law claim is completely preempted by § 301 of the LMRA, it must either be dismissed (as preempted by federal labor-contract law) or treated as a § 301 federal-question claim.  *See Allis-Chalmers*, 471 U.S. at 220.  To prevail in a § 301 action, a plaintiff "must show both that the employer violated the terms of the collective-bargaining agreement and that the union breached its duty of fair representation."  *Bartholomew v. AGL Resources, Inc.*, 361 F.3d 1333, 1337 (11th Cir. 2004).  The district court concluded that Mr. Baldwin's state-law claim could not be treated as a § 301 claim and granted summary judgment to Boise, which had presented evidence that the dispute with Mr. Baldwin had been resolved in arbitration under the terms of the CBA and LCA agreements.

We review a district court's grant of summary judgment *de novo*, and we view the evidence in the light most favorable to Mr. Baldwin, the non-moving party.  *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).  We will affirm if there is no genuine issue of material fact and Boise is entitled to

judgment as a matter of law. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263–64 (11th Cir. 2010).

Mr. Baldwin argues that summary judgment was improper because the arbitral decision in the record is not genuine. According to Mr. Baldwin, the district court erred when it relied on the authentication provided by Boise — a notarized letter from the arbitrator — as sufficient proof that the arbitration decision was genuine. The problem for Mr. Baldwin is that he did not present any contrary evidence to support his claim that the arbitral decision submitted by Boise was not genuine. The district court properly found that the notarized letter from the arbitrator identifying the decision, as well as the decision itself, was sufficient to support a finding that the document was, in fact, the arbitral decision.

Mr. Baldwin further claims that the notarized letter was insufficient and invalid because the notary wrote in her commission expiration date and because the letter was not the original. But he has not provided any legal authority for this argument. Federal Rule of Evidence 901 provides that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is," and this can be accomplished through a variety of methods. *See* Fed. R. Evid. 901(a), (b). Under the circumstances, Boise's submission to the district court was sufficient.

8

Because we may consider Boise's submission of the sworn letter from the arbitrator identifying the decision, as well as the decision itself, we conclude, as the district court did, that the issue of whether Mr. Baldwin's termination was wrongful was already settled in arbitration. The Federal Arbitration Act, 9 U.S.C. § 2 *et seq.*, reflects a federal policy in favor of arbitration as an alternative to litigation and judicial review of arbitral decisions is limited. *See Frazier v. CitiFinancial Corp.*, 604 F.3d 1313, 1321 (11th Cir. 2010). An arbitration decision may be vacated in only four instances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced, or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Mr. Baldwin did not and does not claim that the arbitral decision was procured by undue means or that the arbitrator was guilty of any misconduct. Instead, he asserted only that the arbitration decision submitted by Boise was not authentic and that the LCA was invalid.

9

As to the last point, the arbitrator determined that the LCA was valid, and Mr. Baldwin did not allege that the decision was the result of any misbehavior by the arbitrator. *See* 9 U.S.C. §§ 10(a)(2)–(4). The district court was therefore correct in concluding that Mr. Baldwin could not relitigate the issue decided in arbitration and that he had failed to allege any grounds for vacating the arbitral decision. *See Frazier*, 604 F.3d at 1321. Because Mr. Baldwin did not state a claim under § 301 of the LMRA and did not allege any proper grounds for vacating the arbitral decision, we conclude that the district court correctly granted summary judgment in favor of Boise.

## IV

We have previously noted that "[t]he right of access to the courts is neither absolute nor unconditional. Conditions and restrictions on each person's access are necessary to preserve the judicial resource for all other persons." *Miller v. Donald*, 541 F.3d 1091, 1096 (11th Cir. 2008) (alterations added; quotation omitted). And "[a] district court has the inherent authority to manage its own docket, so as to achieve the orderly and expeditious disposition of cases." *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009) (alterations added; quotation omitted). This includes the power to place restrictions on a litigant's filings when necessary, as long as the restriction does not completely foreclose the litigant's access to the courts. *See Miller*, 541

10

F.3d at 1096–97.  We review such restrictions for abuse of discretion.  *See Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 863–64 (11th Cir. 2004) (reviewing various district court decisions made in the course of managing its docket for abuse of discretion).

Mr. Baldwin argues that the district court abused its discretion and violated his due process rights when it prohibited him from responding to Boise's supplement of exhibits in support of the motion for summary judgment.  Contrary to Mr. Baldwin's claim, however, the district court did not prohibit him from responding to Boise's supplemental filing or from challenging the notarized letter Boise submitted in order to establish the authenticity of the arbitrator's decision.  Rather, the district court merely ordered Mr. Baldwin to first seek permission from the court before filing any additional responses.  *See* D.E. 32 at 2.  The district court did not abuse its discretion in imposing this limitation because it did not foreclose Mr. Baldwin's access to the court.  Mr. Baldwin could have requested permission to file a response, and the restriction was a legitimate exercise of the district court's "inherent authority to manage its own docket, so as to achieve the orderly and expeditious disposition of cases."  *Equity*, 556 F.3d at 1240 (quotation omitted).

11

## V

For the forgoing reasons, we affirm the district court's exercise of subject-matter jurisdiction and grant of summary judgment in favor of Boise.

**AFFIRMED.**