[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11891
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-24219-UU

KEVIN OWENS,

Plaintiff - Appellant,

versus

CENTURION MEDICAL,
MARTIN CI WARDEN,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 3, 2019)

Before MARCUS, BRANCH and JULIE CARNES, Circuit Judges.

PER CURIAM:

Kevin Owens, a Florida prisoner proceeding with counsel, appeals the district

court's sua sponte dismissal of his pro se 42 U.S.C. § 1983 action without prejudice

for previously having filed three frivolous complaints and not alleging an "imminent

danger of serious physical injury," pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(g), and its denial of his subsequently filed motions to alter judgment. In Owens's § 1983 complaint, he claimed that Centurion Medical ("Centurion") and Warden Bryer, of the Martin County Correctional Institution ("MCI"), were deliberately indifferent to his medical needs. On appeal, Owens argues that: (1) the district court erred in failing to accord deference to his pro se imminent danger allegations concerning the defendants' disregard of his legume allergy, required Benadryl prescription, and requests for a straw hat; and (2) the district court erroneously failed to find that he stated a deliberate indifference claim on these bases. After careful review, we vacate the judgment of the district court and remand with instructions to dismiss the deliberate indifference claims as moot.

I.

Owens submitted documents with his § 1983 complaint detailing his medical history. In relevant part, Owens was diagnosed in 2015 with a severe allergy to peanuts and beans and a mild allergy to soybeans. In July 2017, a warden from the Dade Correctional Institute ("DCI") -- where Owens was housed previously -- denied one of Owens's prior grievances, noting that he had been seen in an "impaired inmate meeting on 07/18/2017" and told that a straw hat would be ordered for him. In early October 2017, once Owens was transferred to MCI, a dietician prescribed him a medical diet that banned peanuts, beans, or other legumes. On October 10, he

2

submitted an "Inmate Sick Call Request," listing several medical concerns, requesting a sick pass renewal and medication renewals, and claiming that he was receiving inadequate medical care. Among other things, he complained he was told that his diet prescription was not given to MCI food services, it was still serving him legumes, and he needed a 50 mg dosage of Benadryl because the 25 mg dosage he was receiving did not stop his allergic reactions. He complained of rashes and stomach pain and of his allergy to the generic soap the prison provided, and asked for medicated soap, shampoo, and ointment. He also requested a straw hat and sunscreen to protect him from developing skin cancer again; a cane and back brace, to be placed on the lower bunk, and to not be required to push, pull, lift, or stand for a prolonged period; and a hearing aid, nasal spray, Ibuprofen, and other medicines.

Thereafter, Owens submitted further Sick Call Requests to MCI, reiterating his medical concerns and requests for sick pass and medication renewals, as well as an Emergency Grievance to the Florida Department of Corrections, alleging inadequate medical care at MCI and Centurion and non-compliance with his diet prescription. On October 31, a MCI warden rejected Owens's Emergency Grievance because it was not of an emergency nature and returned his request for administrative appeal without action for failure to comply with inmate grievance procedures.

Owens then filed the instant § 1983 complaint in the United States District Court for the Southern District of Florida. In it, he sought injunctive relief, asking

3

the court to "take action to protect [him] from allergic reactions [and] skin cancer by ordering Benadryl [] as needed and sun protection . . . ."  A magistrate judge prepared a report and recommendation ("R&R"), recommending the complaint be dismissed under § 1915(g) because Owens was a three-striker, was barred from proceeding in forma pauperis, and could not show he was in "imminent danger of serious physical injury."  The magistrate judge said that Owens relied on the same imminent danger allegations that had been denied in prior cases, and that Owens failed to show imminent danger since he admitted he'd received Benadryl for his allergic reactions and the attachments showed MCI had granted his straw hat request.

Owens objected to the magistrate judge's recommendation, and filed a motion for appointment of counsel and an emergency motion for relief.  Among other things, he said that MCI had plotted an inmate assault against him in retaliation for his grievances, and upon his return from the hospital for his injuries, MCI still withheld his medications and medical devices and served him non-compliant meals.  Over Owens's objections, the district court entered an order adopting the R&R, dismissing Owens's complaint without prejudice, and denying as moot all pending motions.

At that point, Owens was transferred to Tomoka Correctional Institution ("TCI").  He later filed two motions to alter judgment, reasserting his imminent danger claims against MCI, and alleging that he had been transferred multiple times, during which he was given non-compliant meals, suffered severe allergic reactions,

4

was denied Benadryl, and was punished when he attempted to seek medical treatment or file grievances. Owens asserted that, at TCI, he had suffered serious allergic reactions and had been given Benadryl shots and medication, but that he would be in imminent danger when his temporary Benadryl prescription lapsed. He added that TCI food services told him that he was going to be "kicked off [his] diet" because he refused to eat meals to which he was allergic, and that it was "just a matter of time" until he suffered more reprisals. The district court summarily denied the motions, and this timely appeal follows.

## II.

We review de novo a sua sponte dismissal under § 1915(g). Miller v. Donald, 541 F.3d 1091, 1100 (11th Cir. 2008). However, we may affirm the district court's judgment on any ground supported by the record, regardless of whether the court relied upon or even considered that ground. Kernel Records Oy v. Mosley, 694 F.3d 1294, 1309 (11th Cir. 2012). Indeed, "[i]t is incumbent upon this [C]ourt to consider issues of mootness sua sponte and, absent an applicable exception to the mootness doctrine, to dismiss any appeal that no longer presents a viable case or controversy." Pac. Ins. Co. v. Gen. Dev. Corp., 28 F.3d 1093, 1096 (11th Cir. 1994). Thus, "mootness is a threshold jurisdictional inquiry." Brooks v. Ga. State Bd. of Elections, 59 F.3d 1114, 1121 (11th Cir. 1995). "Article III denies federal courts

5

the power to decide questions that cannot affect the rights of the litigants in the case before them." Id. (quotations omitted).

Under the PLRA, indigent prisoners may proceed with a civil action if they partially pre-pay the filing fee. 28 U.S.C. § 1915(a)(1), (b)(1)-(2). But Owens has been designated as a "three-striker," under § 1915(g). The three-strikes provision of § 1915(g) provides that:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). A three-strike prisoner must show he is in imminent danger "at the time that he seeks to file his suit in district court or seeks to proceed with his appeal or files a motion to proceed IFP." Medberry v. Butler, 185 F.3d 1189, 1192-93 (11th Cir. 1999) (quoting Baños v. O'Guin, 144 F.3d 883, 884 (5th Cir. 1998)).

Even where we conclude that the district court erroneously dismissed a complaint on imminent-danger grounds, we nevertheless must affirm the dismissal if the complaint fails to state a claim for deliberate indifference. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) ("The determination that Brown alleged imminent danger of serious physical injury does not end our inquiry. . . . If Brown's amended complaint fails to state a claim for deliberate indifference, then the

6

dismissal of the amended complaint must be affirmed.").  It is well established that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."  Id. (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  A prisoner states a valid § 1983 claim "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once proscribed."  Estelle, 429 U.S. at 104–05.

Here, Owens makes clear in his brief that he challenges solely the district court's conclusion that he failed to show imminent danger and deliberate indifference at the hands of MCI based on his legume allergy and straw hat allegations.[1]  However, before we address these issues, we must determine whether Owens's claims against MCI and Centurion are moot now that he has been transferred to a new facility, TCI.

In considering whether a case is moot, "we look at the events at the present time, not at the time the complaint was filed or when the federal order on review

---

[1] Accordingly, he has abandoned any claims concerning the defendants' alleged failure to provide him a hearing aid battery, planned inmate assault against him, failure to examine his injuries from the assault, failure to return his other prescription medications and medical devices, falsification of medical records, and efforts to prevent him from filing further grievances and legal documents.  See Brown v. United States, 720 F.3d 1316, 1332 (11th Cir. 2003) (explaining that a party wishing to raise a claim or issue on appeal must plainly and prominently address it in his brief, otherwise it will be considered abandoned).  Similarly, he has abandoned any claims relating to the district court's denial of his motions to alter judgment.  See id.

7

was issued."  <u>Dow Jones & Co. v. Kaye</u>, 256 F.3d 1251, 1254 (11th Cir. 2001).  In other words, this "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."  <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 67 (1997) (quotations omitted).  As a result, the Supreme Court routinely has cautioned that a case becomes moot "if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party."  <u>Church of Scientology of Cal. v. United States</u>, 506 U.S. 9, 12 (1992) (quotations omitted).

> The Supreme Court has articulated a two-part test for mootness:

> Simply stated, a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.  We recognize that, as a general rule, voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, <u>i.e.</u>, does not make the case moot.  But jurisdiction, properly acquired, may abate if the case becomes moot because

> (1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, and

> (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.

> When both conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law.

<u>Cty. of L.A. v. Davis</u>, 440 U.S. 625, 631 (1979) (citations and quotations omitted).

For example, a prisoner's transfer or release from a correctional facility generally will moot his claims for injunctive relief in a § 1983 action.  <u>See</u> <u>Spears v.</u>

8

Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988) (noting that, in this circumstance, there is no longer a "case or controversy once the inmate has been transferred"); see also Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) ("Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects.").  Nor will there be any case or controversy when the chance of a prisoner's return to the offending facility is too speculative.  Cotterall v. Paul, 755 F.2d 777, 780 (11th Cir. 1985) (holding that a prisoner's claim for injunctive relief was moot since he was no longer being held in the jail with the conditions he had challenged and the risk of being sent back to that jail, and suffering from the threatened injury, was too speculative).

In this case, Owens's transfer to TCI since filing his § 1983 complaint renders moot his deliberate indifference claims against MCI Warden Bryer and Centurion, for which he solely sought injunctive relief.  See Kernel Records Oy, 694 F.3d at 1309; Dow Jones & Co., 256 F.3d at 1254; Spears, 846 F.2d at 1328.  Namely, the injunctive relief Owens sought -- ostensibly that the district court order MCI and Centurion to refill his Benadryl prescription and provide him sun protection -- can no longer affect his rights while he is at TCI.  See Brooks, 59 F.3d at 1121.  Accordingly, even if Owens proved his deliberate indifference claims against MCI and Centurion, neither this Court nor the district court could grant "any effectual relief whatever" to him.  See Church of Scientology of Cal., 506 U.S. at 12.

9

Nor do any mootness exceptions apply.  Because Owens was transferred to TCI, it can be said with assurance that there is no reasonable expectation that MCI and/or Centurion will continue to deprive him of a straw hat, a compliant diet, or his Benadryl prescription, and the effects of the alleged deprivations at MCI have been completely and irrevocably eradicated.  See Davis, 440 U.S. at 631.  Further, at this stage in the litigation, any possible transfer back to MCI is too speculative.  See Cotterall, 755 F.2d at 780.

Finally, to the extent that Owens's subsequent arguments regarding his treatment at TCI, as presented in his motions to alter judgment, are relevant to the mootness determination, these arguments fall short of showing "any continuing, present adverse effects."  See Wahl, 773 F.2d at 1173.  First, he made no further straw hat or sun protection allegations in relation to his imprisonment at TCI. Second, as for his legume allergy allegations, while he claimed that he suffered from a serious allergic reaction at TCI and that TCI food services said they would kick him off from his diet, he did not say that TCI had actually kicked him off his diet. Moreover, he conceded that he had been given Benadryl shots and medication and did not claim that there had been any delay in receiving the medication.  His allegation that he would be in imminent danger once his temporary Benadryl prescription lapsed is too speculative, as he did not claim that he was about to run out of the prescription or that TCI had indicated to him that it would allow the

10

prescription to lapse.  Thus, Owens has failed to show that his past exposure to illegal conduct was accompanied by any continuing, present injury or real and immediate threat of repeated injury, such that there is no current case or controversy.  See id.

Accordingly, we vacate the judgment of the district court and remand with instructions to dismiss Owens's deliberate indifference claims as moot.

**VACATED AND REMANDED.**