[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-10266

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CARMELO ETIENNE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20257-DPG-1

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and MARCUS, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether the district court committed reversible error when it imposed two conditions of supervised release: a financial disclosure condition and a stay-away order. In 2021, Carmelo Etienne called a federal courthouse and threatened violence against a federal magistrate judge, a courtroom deputy, and other courthouse employees. He later pleaded *nolo contendere* to threatening to assault and murder a federal magistrate judge and a courtroom deputy. *See* 18 U.S.C. § 115(a)(1)(B). The district court imposed a time-served sentence and three years of supervised release. As special conditions of that release, the district court also ordered Etienne to make financial disclosures to the probation office; prohibited him from visiting the federal courthouses in Fort Pierce and West Palm Beach, and the James Lawrence King Courthouse in Miami; and prohibited him from calling the judges' chambers or court facilities. Etienne failed to object to the financial disclosure condition, but he argued that the stay-away order unduly burdened his right to access the federal courts. The district court overruled his objection. Etienne now challenges both conditions. Because it was not plain error to impose the financial disclosure condition and because the stay-away order is not vague or overbroad and does not unduly burden Etienne's right to access the federal courts, we affirm.

## I. BACKGROUND

In 2018, the Florida Department of Children and Families petitioned a state court to remove three children from Carmelo Etienne's home in Vero Beach, Florida. Etienne later filed a complaint *pro se* in the district court that alleged that the removal of his children violated his federal civil rights. 42 U.S.C. § 1983. A magistrate judge recommended that Etienne's complaint be dismissed with prejudice. The district court adopted the magistrate judge's recommendation.

In March 2021, Etienne placed a telephone call to the federal courthouse in Fort Pierce, Florida. He identified himself to the clerk who answered the phone and asked to speak to the courtroom deputy who worked for the magistrate judge who had dismissed his case. After being told that the courtroom deputy was unavailable, Etienne became hostile. He said that the magistrate judge assigned to his case "is going to get hanged." He ranted about people who "took the children" and said, "You f*cked up." Etienne made several threats, including "This is judgment day"; "I am hanging everybody in the courthouse"; "I am hanging the president and congress"; "I am the owner of all"; "I am going to show you what bloodshed looks like"; and "I will know if you lied about [the judge's courtroom deputy] today, I have cameras on the courthouse." Etienne then said, "Thank you for remaining calm," and before hanging up, demanded that the clerk call him back in an hour.

The clerk who answered Etienne's call reported the threat to the United States Marshals, who determined that the call came from a number registered to Etienne's business. The marshals interviewed Etienne about the phone call, and he admitted that the call came from his business telephone number. The day after the interview, Etienne called the Fort Pierce courthouse again, identified himself, and gave the email address for his business as his contact. The marshals were alerted and listened to the call. Etienne referred to the magistrate judge and the courtroom deputy by name. He told the clerk, "I had three children taken away, and I need jurisdiction," and "I am the word God, I own you, I need jurisdiction." Two weeks later, Etienne was arrested on charges stemming from his two calls.

A grand jury returned an indictment charging Etienne with two counts. First, the indictment charged Etienne with threatening to assault and murder a United States judge with intent to retaliate against the judge on account of the performance of official duties. *See* 18 U.S.C. § 115(a)(1)(B). Second, the indictment charged him with threatening to assault and murder an official, the courtroom deputy, whose murder would be a federal crime, *see id.* § 1114, with intent to retaliate against the official on account of the performance of official duties, *id.* § 115(a)(1)(B). Etienne pleaded *nolo contendere*.

The probation office prepared a presentence investigation report. Based on a total offense level of 17 and a criminal history category of I, the probation office determined that Etienne's

guideline sentencing range was 24 to 30 months of imprisonment. The report also recommended special conditions of supervision, including a financial disclosure condition that would require Etienne to "provide complete access to financial information, including disclosure of all business and personal finances, to the U.S. Probation Officer."

Etienne made two objections to the presentence investigation report. First, he objected that the report provided "no reduction for acceptance of responsibility." Second, he objected to the report's statement that he had previous arrests for possession of cocaine and marijuana. He did not object to any of the recommended special conditions for supervision. When the district court allowed him to speak before it imposed sentence, Etienne criticized his attorney, the prosecutor, and the justice system.

The district court imposed a 24-month sentence and a supervised release term of three years with special conditions. These special conditions included a special assessment of $200, a financial disclosure condition, and a stay-away order. The district court ordered Etienne to "stay away from the federal courthouses located in Fort Pierce and West Palm Beach, as well the King Building [in Miami]," and ordered that Etienne "not call any judges or any court facilities." It explained that if Etienne needed to file something at any of the specified courthouses, he could do it through counsel or by mail, but not in-person. The district court also explained the prohibition on calling the judge or the court facilities and that there

was no need to call judges because judges may not talk to litigants by phone.

Etienne objected to the stay-away order because it could affect his "ability to seek redress from the courts." The district court clarified that Etienne could still file requests with the court, but that he could not do so in person at Fort Pierce, West Palm Beach, or the King Courthouse; he would have to go to Fort Lauderdale or another Miami courthouse. The district court explained that the stay-away order was based on both Etienne's underlying conduct and his "concern[ing]" statements before the imposition of his sentence. In the written judgment, the district court imposed as special conditions of supervised release that Etienne "is prohibited from contacting the victims and [the prosecutor on the case] or visiting the United States Courthouses in Fort Pierce and West Palm Beach and the James Lawrence King Courthouse in Miami while on probation/supervised release. The defendant shall not call the Judges' Chambers or any facility."

## II. STANDARDS OF REVIEW

Two standards govern our review. We review the imposition of special conditions of supervised release for abuse of discretion. *United States v. Moran*, 573 F.3d 1132, 1137 (11th Cir. 2009). A district court abuses its discretion if we are left with a "definite and firm conviction that the [district] court committed a clear error of judgment in the conclusion it reached." *United States v. Taylor*, 338 F.3d 1280, 1283 (11th Cir. 2003) (alteration in original) (citation and

internal quotation marks omitted). We review for plain error any objections not raised in the district court. *Moran*, 573 F.3d at 1137.

## III. DISCUSSION

We divide our discussion into two parts. First, we explain that the district court did not plainly err by requiring Etienne to provide his financial information to the probation office. Second, we explain that the district court did not abuse its discretion by requiring Etienne to stay away from certain federal courthouses and not call the judges' chambers or court facilities as a condition of supervised release.

### A. *The Financial Disclosure Condition Was Not Plain Error.*

Etienne challenges for the first time on appeal the financial disclosure condition of his supervised release. He argues that although plain error ordinarily applies when a defendant failed to object to a special condition during sentencing, we should be persuaded by the reasoning in *United States v. Sofsky* to "relax the otherwise rigorous standards of plain error review." *See* 287 F.3d 122, 125 (2d Cir. 2002). The *Sofsky* court reviewed a special condition of supervised release under a relaxed plain-error standard even though the defendant did not object in the district court. The Second Circuit explained that, unlike an unobjected error at trial, an unobjected error at sentencing would lead, "at most," to "only a remand for resentencing" or "a modification of the allegedly erroneous condition of supervised release." *Id.*

We decline to follow *Sofsky*. We have never relaxed the plain-error standard when reviewing special conditions of supervised

release, and the Supreme Court has never suggested that we should make an exception for this kind of error. Indeed, we have consistently reviewed special conditions for plain error when no objection was raised, and we are bound by our precedent. *See, e.g., United States v. Carpenter*, 803 F.3d 1224, 1237 (11th Cir. 2015); *see also United States v. Zinn*, 321 F.3d 1084, 1087 (11th Cir. 2003).

Because Etienne did not object to the financial disclosure condition in the district court, we review its imposition for plain error. *See Moran*, 573 F.3d at 1137. To prevail under that standard, Etienne must establish that the district court made an error that was plain and that affected his substantial rights. *See United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005). An error is plain only if binding precedent establishes the error or if the language of a statute or rule clearly resolves the issue. *See United States v. Frank*, 599 F.3d 1221, 1239 (11th Cir. 2010). Satisfying the standard is difficult. *Puckett v. United States*, 556 U.S. 129, 135 (2009).

Etienne cannot establish that a plain error occurred. No controlling caselaw holds that a financial disclosure is an inappropriate condition of supervised release in this circumstance. Nor does the condition conflict with any statute or rule. A district court may impose any special condition of supervised release that it "deems appropriate," *see United States v. Tome*, 611 F.3d 1371, 1375 (11th Cir. 2010), so long as the condition is "reasonably related to" specific sentencing factors, "involves no greater deprivation of liberty than is reasonably necessary" to fulfill the statutory purpose, and "is consistent with any pertinent policy statements issued by the

Sentencing Commission," 18 U.S.C. § 3583(d)(1)–(3). The relevant policy statement states that a financial disclosure condition may be imposed if the district court orders restitution, forfeiture, notice to victims, or a fine. United States Sentencing Guidelines Manual § 5D1.3(d)(3) (Nov. 2021). But the guideline also states that a financial disclosure condition "may otherwise be appropriate in particular cases." *Id.* § 5D1.3(d). District courts must impose a special assessment for each count of conviction. 18 U.S.C. § 3013(a). The district court ordered Etienne to pay a special assessment, and the financial disclosure condition is not clearly unrelated to that assessment.

B. *The District Court Did Not Abuse its Discretion by Imposing a Stay-Away Order as a Condition of Etienne's Supervised Release.*

Etienne challenges the stay-away order on two grounds. He argues that the stay-away order is vague and overbroad, and he argues that the order unduly burdens his right to access the federal courts. We address these arguments in turn.

1. The Stay-Away Order Is Not Vague or Overbroad.

Etienne asserts that the stay-away order is vague and overbroad because it forbids him from calling "the Judges' chambers or any facility" or "visiting" the federal courthouses in Fort Pierce and West Palm Beach and the King Courthouse in Miami. He challenges the terms "any facility" and "visiting." The phrase "any facility," he argues, is unclear. And he contends that the verb "visiting," unlike a verb such as "entering," is also vague and overbroad

and could include "merely standing outside the specified federal courthouses."

A district court has discretion to impose "any condition of supervised release it deems appropriate so long as it comports with the factors enumerated in 18 U.S.C. [section] 3553(a)." *Tome*, 611 F.3d at 1375. Conditions of supervised release are not vague and overbroad when they are "undeniably related to the sentencing factors," *United States v. Nash*, 438 F.3d 1302, 1307 (11th Cir. 2006) (citation and internal quotation marks omitted), and are "sufficiently specific to provide the defendant with adequate notice of prohibited conduct," *United States v. Coglianese*, 34 F.4th 1002, 1012 (11th Cir. 2022) (citation and internal quotation marks omitted). Terms are sufficiently specific when they have a commonsense meaning. *Id.* To determine ordinary meaning, we look to dictionaries, *see id.*, and context, *see In re Failla*, 838 F.3d 1170, 1175–76 (11th Cir. 2016). And if there is a conflict between the oral sentence and the written judgment, the oral pronouncement controls. *United States v. Bates*, 213 F.3d 1336, 1340 (11th Cir. 2000).

The term "any facility" is not vague or overbroad. In its oral pronouncement of the sentence, the district court specified that Etienne was prohibited from calling "court facilities." Although the later written judgment said "any facility," the oral pronouncement controls. *Id.* The meaning of "court facilities" is clear in context. *See Coglianese*, 34 F.4th at 1013. Etienne was charged with threatening a specific judge and the judge's courtroom deputy, and the term "court facilities" was included in a list of related prohibitions that

forbade Etienne from contacting his victims or the prosecutor on his case, calling the judges' chambers, or visiting specific federal courthouses. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 24, at 167 (2012) ("Context is a primary determinant of meaning."); *see also id.* § 31, at 195 ("[The Associated-Words Canon] especially holds that 'words grouped in a list should be given related meanings.'" (citation omitted)).

When the term "court facilities" is considered in context, Etienne had specific notice that he could not call the federal court facilities enumerated in the stay-away order. His argument that he has "no notice of who and what he is prohibited from calling" is meritless when considered in the context of the other special conditions of supervised release and his underlying conduct. In context, it is clear that the prohibition does not extend to state courthouses and facilities. And the prohibition on calling federal court facilities is "undeniably related" to the sentencing factors. *See Nash*, 438 F.3d at 1307 (citation and internal quotation marks omitted). Among those factors is "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). Etienne called a federal courthouse and threatened the lives of a magistrate judge and an employee. The prohibition on calling federal court facilities relates to those underlying offenses.

Nor did the district court abuse its discretion when it prohibited Etienne from "visiting" the federal courthouses in Fort Pierce and West Palm Beach and the King Courthouse in Miami. The term "visiting" is not vague. Its definition is straightforward: to "go

to see or stay at (a place) for a particular purpose." *Visit*, MERRIAM-WEBSTER, https://perma.cc/PUV5-57AV (last visited Feb. 29, 2024). Etienne would violate this condition by purposefully going to one of the prohibited courthouses and staying there. Passing the facility on the street is not "visiting." But loitering outside the building would count. And like the prohibition on calling court facilities, the prohibition on visiting the specified courthouses relates to Etienne's underlying offense. *See* 18 U.S.C. § 3553(a)(1).

### 2. The Stay-Away Order Does Not Unduly Burden Etienne's Right to Access the Federal Courts.

Etienne also argues that the stay-away order prohibiting him from visiting the federal courthouses in Fort Pierce and West Palm Beach and the King Courthouse in Miami or calling court facilities unduly burdens his constitutional right to access the federal courts. Although access to the courts is a constitutional right, *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003), a condition of supervised release is not invalid any time it affects a supervisee's ability to exercise his constitutional rights, *Zinn*, 321 F.3d at 1089 (explaining that a condition of supervised release "is not invalid simply because it affects a probationer's ability to exercise constitutionally protected rights"). Instead, the metrics for assessing a special condition are whether it is reasonably related to the statutory sentencing factors, 18 U.S.C. § 3553(a), "involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in [section 3553(a)]," and is "consistent with any pertinent policy statements issued by the Sentencing Commission." *Id.* § 3583(d)(1)–(3).

Etienne argues that the stay-away order is more restrictive than necessary.

This Court has never considered whether a condition of supervised release like the one imposed on Etienne unduly burdens the right to access the federal courts. But we have affirmed restrictive conditions of supervised release that burden constitutional rights so long as the conditions are tempered by reasonable exceptions. *See, e.g.*, *Zinn*, 321 F.3d at 1093 (affirming a restriction on internet use in a child pornography prosecution because the supervisee could still use the internet for valid purposes by obtaining his probation officer's permission); *Coglianese*, 34 F.4th at 1011 (same); *United States v. Cothran*, 855 F.2d 749, 752 (11th Cir. 1988) (affirming condition ordering supervisee to stay out of Fulton County because he could still enter the county on occasion with the permission of his probation officer). A special condition may burden the right to access the courts so long as the special condition does not amount to an *absolute* bar on access.

We have also allowed restrictions on civil litigants' right to access the courts so long as the litigant is not completely foreclosed from any access to the courts. *See, e.g.*, *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1317–18 (11th Cir. 2021) (holding that the district court did not abuse its discretion by imposing a prefiling requirement on an abusive litigant because the litigant "is not completely denied access to the courts"). We have held that although protecting the courts from abusive civil litigants is important, the restrictions may not "impose blanket prohibitions on the litigant."

*Miller v. Donald*, 541 F.3d 1091, 1097 (11th Cir. 2008); *see also Procup v. Strickland*, 792 F.2d 1069, 1074 (11th Cir. 1986) (en banc) (holding that civil litigants "cannot be completely foreclosed from *any* access to the court"). In *Miller*, we explained that an injunction barring a serial civil litigant from filing anything with the court except in limited circumstances was too restrictive because it would completely bar the litigant from filing new civil suits. 541 F.3d at 1095, 1098. And in *Copeland v. Green*, we held that an order barring a *pro se* civil litigant from "entering the federal courthouse in Birmingham and from delivering documents to the Clerk of Court [was] impermissibly restrictive of his right to access to that court." 949 F.2d 390, 391 (11th Cir. 1991). Similarly, in *Procup*, we held that requiring a serial civil litigant to file only through an attorney was effectively an absolute bar on his access to the courts because the litigant's track record—including suing his *pro bono* counsel—made it impossible for him to retain an attorney. 792 F.2d at 1071.

The special condition prohibiting Etienne from visiting three federal courthouses or calling the judges' chambers and court facilities does not absolutely bar his access to the federal courts. Etienne need not visit a courthouse himself or call a judge or court facilities to conduct court business. He still enjoys sufficient access.

Etienne's case is distinguishable from *Miller*, *Procup*, and *Copeland*. Unlike Miller, Etienne is not barred from filing lawsuits; he is barred only from filing them in person at the Fort Pierce courthouse, the West Palm Beach courthouse, or the King Courthouse in Miami. And prohibiting Etienne from filing in-person at those

courthouses does not absolutely bar him from accessing the courts. Etienne may file by mail, or he may file in-person at the Wilkie D. Ferguson Jr., Courthouse in Miami or at the courthouse in Fort Lauderdale, both of which accept filings for any division in the Southern District of Florida. Indeed, the District Clerk does not have an office or accept filings in the King Courthouse, which is only a city block away from the Ferguson Courthouse. Because he may go in-person to the Ferguson and Fort Lauderdale Courthouses, Etienne has ample access to the Clerk's Office and can seek the assistance of its employees if he needs it.

None of our precedents address a filing restriction in the criminal context. Unlike the civil litigants in *Miller*, *Procup*, and *Copeland*, Etienne is not an abusive civil litigant. He is guilty of criminal conduct and pleaded *nolo contendere* to crimes of threatening court officials. Convicted criminals often face restrictions that civil litigants do not, even if the civil litigants are ill-behaved. *See, e.g.*, *Jones v. Governor of Fla.*, 975 F.3d 1016, 1028–29 (11th Cir. 2020) (en banc) (explaining that the Constitution allows states to disenfranchise felons). The stay-away order, unlike the orders in our civil precedents, was not designed to stop Etienne from filing frivolous lawsuits in federal court. It was narrowly tailored to protect the victims of his crimes and to address the serious conduct underlying his sentence: threats that he made on the lives of a federal magistrate judge and federal employees. Etienne's situation is meaningfully different from that of a vexatious civil litigant, and his underlying criminal conduct make this restriction appropriate.

The order does not restrict Etienne more than is reasonably necessary to fulfill the statutory purposes of punishment. *See* 18 U.S.C. § 3583(d)(2). The sentence should "afford adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant." *Id.* § 3553(a)(2)(B)–(C). The stay-away order does so. The order does not bar Etienne from all courts in the judicial district. It instead prohibits Etienne from visiting only those federal courthouses in which the officials whom Etienne threatened work. And it prevents him from calling those facilities—an action integral to his crimes of conviction. Considering that Etienne threatened violence against a judge and courtroom deputy by phone and called the courthouse more than once, a special condition prohibiting him from visiting the relevant courthouses or calling those facilities reasonably deters him from engaging in that conduct again and protects the public from that conduct.

Nor does the stay-away order unduly burden Etienne's right of access to trials. *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 603 (1982). Like all constitutional rights, the right to access a trial is not absolute. *See United States v. Brazel*, 102 F.3d 1120, 1155 (11th Cir. 1997). Even criminal defendants facing their own trials can be removed from trial for disruptive behavior. *See Foster v. Wainwright*, 686 F.2d 1382, 1387 (11th Cir. 1982). Because Etienne made multiple threats of violence against court officials who work in the buildings that he is prohibited from entering, it was not an abuse of discretion for the district court to limit his access to trials in those three buildings. And the stay-away order applies only to courthouses in which fewer trials take place. Most

trials in the Southern District of Florida are held in the Wilkie D. Ferguson Jr., Courthouse in Miami and the Fort Lauderdale courthouse, and Etienne has unfettered access to both under the terms of his supervised release. The stay-away order does not act as an absolute bar on Etienne's right to access trials.

To be sure, unlike the special conditions in *Zinn*, *Coglianese*, and *Cothran*, the stay-away order does not provide a built-in mechanism for Etienne to visit the specified courthouses or call the court facilities if he needs to do so. He could not go to those courthouses or call for a valid purpose by, for example, simply getting permission from his probation officer. But the absence of an exception provision does not doom the validity of the stay-away order.

Etienne has other options for doing legitimate business in federal court besides calling or visiting the specified courthouses. And if he needs to call or enter one of the specified courthouses for a valid purpose, the district court could modify the conditions of supervised release, if necessary. *See* 18 U.S.C. § 3583(e)(2) ("The court may . . . modify . . . the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release."). Of course, that a district court may modify the terms of supervised release does not mean that an unlawful condition is permissible. But when the restriction on Etienne's right to access the federal courts is already narrowly prescribed—limiting his access to only certain courthouses for a three-year period—his right to access is not unduly burdened. District courts need not spell out every possible scenario when imposing conditions of

supervised release, and if Etienne must visit one of the three courthouses named in the terms of his supervised release in the time that remains in that term, the issue should be addressed when it arises, if it arises at all.

Special conditions of supervised release are reviewed only for abuse of discretion, and we cannot say that the district court abused its wide discretion. It neither misunderstood the law nor made erroneous findings of fact. It narrowly tailored the stay-away order to address Etienne's serious criminal conduct. It curtailed only his access for a limited period to three courthouses in which his victims work. Our precedents in the civil context are distinguishable. Because the stay-away order is narrowly tailored and does not create an absolute bar on Etienne's rights, the district court was within its discretion to impose it.

## IV. CONCLUSION

We **AFFIRM** Etienne's sentence.

23-10266        JILL PRYOR, J., Dissenting in Part        1

JILL PRYOR, Circuit Judge, concurring in part and dissenting in part:

Carmelo Etienne called the Fort Pierce federal courthouse and threatened to murder a magistrate judge and other court employees. After his arrest, he pleaded no contest to threatening a federal magistrate judge and a courtroom deputy. The district court sentenced him to time served and three years of supervised release, imposing two special conditions on the supervised release. First, the court imposed a financial-disclosure obligation, requiring that Etienne disclose his finances to the probation office. Second, the court imposed a stay-away order, prohibiting Etienne from visiting the Fort Pierce and West Palm Beach federal courthouses and the James Lawrence King Courthouse in Miami and from calling any judges' chambers or court facilities in any building.

I agree with the majority opinion that imposing the financial-disclosure obligation was not plain error. And I agree that the stay-away order is neither vague nor overbroad. But the stay-away order unduly burdens Etienne's right to access the courts, imposing a greater deprivation of liberty than is reasonably necessary. Because the majority opinion reaches the opposite conclusion, I respectfully dissent in part.

The Constitution prevents the government from "frustrat[ing] a plaintiff . . . in preparing and filing suits." *Christopher*, 536 U.S. at 413; *see also id.* at 415 n.12 (noting that Supreme Court decisions "have grounded the right of access to courts in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the

Fourteenth Amendment Equal Protection and Due Process Clauses" (citations omitted)). Our Circuit has clarified that right largely through civil cases, analyzing whether injunctions imposed by district courts encroach on plaintiffs' constitutional right to file lawsuits. Three cases are most relevant here.

In one case, we held that a district court's injunction encroaches on that right when it "effectively enjoins [a plaintiff] from filing any suit." *Procup v. Strickland*, 792 F.2d 1069, 1071 (11th Cir. 1986) (en banc). In *Procup*, we invalidated the district court's injunction preventing Robert Procup from filing complaints without an attorney's help. *Id.* at 1070. Private attorneys may avoid Procup's cases, we reasoned, leaving a legitimate claim unfiled. *Id.* at 1071.

In another case, we concluded that a district court's injunction encroaches on a litigant's right to file lawsuits when it prevents litigants from entering courthouses. *Copeland v. Green*, 949 F.2d 390, 391 (11th Cir. 1991). The district court enjoined David Copeland from entering the Hugo L. Black Courthouse in Birmingham, Alabama, foreclosing him from filing complaints and other legal documents there. *Id.* The court ordered that Copeland file through the mail instead. *Id.* We concluded that "barring Copeland from entering the federal courthouse in Birmingham and from delivering documents to the Clerk of Court [were] impermissibly restrictive of his right to access to that court." *Id.*

In a third case, we invalidated another filing injunction even though it contained exceptions. *Miller v. Donald*, 541 F.3d 1091, 1098 (11th Cir. 2008). The district court enjoined Arthur Miller, a

23-10266        JILL PRYOR, J., Dissenting in Part        3

frequent litigant, "from submitting further filing with the court, except in limited circumstances, without paying the unpaid filing fees he ha[d] accrued." *Id.* at 1094. That injunction, we said, failed "to uphold Miller's right of access to the courts." *Id.* at 1098. We recognized that the "three limited exceptions in the injunction" provided Miller with some avenues to access the courts. *Id.* But they failed to "provide Miller with meaningful access." *Id.*

Under these precedents, the district court's stay-away order would be impermissible if it were imposed in a civil case: the stay-away order prevents Etienne from entering particular courthouses, which *Copeland* considered "impermissibly restrictive." 949 F.2d at 391. The majority opinion tries to distinguish these precedents. Its attempts are unconvincing.

The majority opinion first tries to distinguish these precedents factually. "Unlike Miller," the majority opinion reasons, "Etienne is not barred from filing lawsuits; he is barred only from filing them in person at the Fort Pierce courthouse, the West Palm Beach courthouse, or the King Courthouse in Miami." Maj. Op. at 14–15. But the injunction imposed on Miller did not bar him from filing altogether; it barred him only from filing lawsuits without paying his unpaid filing fees. And even then, there were exceptions. *Miller*, 541 F.3d at 1098. So *Miller* is not distinguishable on the ground that the district enjoined Miller from filing at all.

In a similar vein, the majority opinion highlights that Etienne can file in person at the Ferguson Courthouse or the Fort Lauderdale courthouse. Maj. Op. at 15. But Copeland was not

enjoined from filing in person at the Huntsville courthouse, yet we struck down the injunction. Well, the majority opinion says, Etienne can file by mail. *Id.* But so could Copeland. *See Copeland*, 949 F.2d at 391. If Copeland's injunction was impermissibly restrictive, then so is Etienne's stay-away order.

The majority opinion next tries to distinguish this case from our right-of-access precedents because Etienne's case is criminal. People convicted of crimes, the majority opinion reminds us, frequently face greater restrictions on their liberties than civil litigants do. True, but unpersuasive. While we have no published precedents addressing a filing restriction in the criminal context, we have relied on our civil right-of-access cases to inform filing restrictions imposed on people convicted of crimes. *See United States v. Flint*, 178 F. App'x 964 (11th Cir. 2006) (unpublished), *cited approvingly in Miller*, 541 F.3d at 1098.

In *Flint*, a criminal case, "the district court enjoined Flint from filing any further pleadings or motions after he had inundated the court with papers during his trial and following his conviction." *Miller*, 541 F.3d at 1098. We relied on *Procup* and *Copeland* to conclude that the district court "improperly infring[ed] on Flint's right of access to the courts." *Flint*, 178 F. App'x at 970. Like Flint's injunction, Etienne's stay-away order "encompasse[s] all unrelated business that [Etienne] might subsequently have with the court." *Miller*, 541 F.3d at 1098. This improperly infringes on his right of access to the courts. *See id.*

23-10266          JILL PRYOR, J., Dissenting in Part          5

And, in the criminal context, the statutory framework for assessing supervised release conditions accounts for these constitutional concerns. It requires us to ensure that each condition "is reasonably related to" enumerated factors, "involves no greater deprivation of liberty than is reasonably necessary for" the purposes underlying those enumerated factors, and "is consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(1)–(3). The stay-away order unduly burdens Etienne's right to file lawsuits under this framework.

The majority opinion explains how the stay-away order is reasonably related to some of the enumerated factors, including the nature and circumstances of Etienne's offenses, the need to afford adequate deterrence, and the need to protect the public. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B)–(C). I agree. Etienne called the court and threatened a judge and a courtroom deputy. A special condition prohibiting him from visiting the courthouse he called and threatened protects the public—and those who were threatened. A special condition prohibiting him from calling court facilities—at least those that received his phoned-in threats—reasonably deters him from making such threats again.[1] And these special conditions mirror the nature and circumstances of Etienne's crime.

---

[1] The stay-away order prevents Etienne from calling any federal court facility, even those that never received his threats. The majority says that "prohibiting him from visiting the relevant courthouses or calling those facilities reasonably deters him engaging in that conduct again." Maj. Op. at 16. But this special condition goes well beyond prohibiting him from calling those facilities; it prevents him from calling any federal court facility, presumably in the nation.

No matter how reasonably related the special condition is to the enumerated factors, though, we have a separate obligation to ensure that it "involves no greater deprivation of liberty than is reasonably necessary" to deter criminal conduct and protect the public. 18 U.S.C. § 3583(d)(2); *see id.* § 3553(a)(2)(B)–(C). A condition can involve a greater-than-necessary deprivation even if that condition reflects the crime's nature and affords adequate deterrence. *See, e.g., United States v. Zinn*, 321 F.3d 1084, 1092–93 (11th Cir. 2003) (noting "the strong link between child pornography and the Internet" while still ensuring the internet restriction was "not overly broad").

Our criminal precedents assessing special conditions show that the stay-away order involves a greater deprivation of liberty than is reasonably necessary. Those precedents have "uniformly upheld" various restrictions on a defendant's liberty only where the defendant could still "seek permission from the probation office to [exercise that liberty] and/or [exercise that liberty] for specified purposes." *United States v. Coglianese*, 34 F.4th 1002, 1010 (11th Cir. 2022); *see also Zinn*, 321 F.3d at 1093 (concluding that the restriction was "not overly broad" because Zinn "may still use the internet" with "his probation officer's prior permission"); *United States v. Cothran*, 855 F.2d 749, 752 (11th Cir. 1988) (rejecting Cothran's challenge to his condition prohibiting him from entering Fulton County, Georgia, because he could "still enter Fulton County with the permission of his probation officer"). Under his stay-away order, Etienne cannot seek permission from the probation office to visit or call courthouses. He also cannot exercise that liberty for

specified purposes. The stay-away order is therefore invalid under our precedents.

The majority opinion nonetheless interprets these precedents differently. It says they require only that the conditions the district court imposes on a defendant's liberty "are tempered by reasonable exceptions" and do "not amount to an *absolute* bar on access." Maj. Op. at 13. But the exceptions in our precedents were not merely reasonable; they were explicit. All three precedents, in fact, stress the same explicit exception: the special conditions were no greater than necessary *because* the defendants could seek permission from the probation office. *See Cothran*, 855 F.2d at 752 (emphasizing that Cothran "may still enter Fulton County with the permission of his probation officer"); *Zinn*, 321 F.3d at 1093 (concluding that the restriction is "not overly broad in that [Zinn] may still use the Internet for valid purposes by obtaining his probation officer's prior permission"); *Coglianese*, 34 F.4th at 1011 (highlighting as significant that the district court "expressly permitted Mr. Coglianese to obtain approval from the probation office to use computers and the internet for legitimate purposes"). Etienne's stay-away order contains neither reasonable nor explicit exceptions. It contains no exceptions at all.

Aside from the statutory framework's focus on whether the stay-away order is a greater-than-necessary deprivation, the stay-away order also fails under the test the majority opinion conjured: whether the order is tempered by reasonable exceptions and does not amount to an absolute bar on access. The majority opinion

8                   JILL PRYOR, J., Dissenting in Part                23-10266

applies this test by focusing on whether Etienne is "completely foreclosed from any access to the courts." Maj. Op. at 13. It reasons that he "enjoys sufficient access," even though he is prohibited "from visiting three federal courthouse or calling the judges' chambers and court facilities." *Id.* at 14. But the majority opinion's application contradicts how our precedents have examined absolute bars.

When our precedents analyzed absolute bars, they considered whether the special condition absolutely barred the restriction's subject, not the right in question. In *Coglianese*, for example, we considered whether the condition imposed an absolute bar "on Mr. Coglianese's use of computer and internet during his term of supervised release," not whether it imposed an absolute ban on his First Amendment rights. *Id.* We concluded that "the court did not impose an absolute ban." *Id.* In *Zinn*, we considered whether the condition imposed an absolute bar on Zinn's use of the internet, concluding that it did not. 321 F.3d at 1093.[2]

---

[2] *See also Zinn*, 321 F.3d at 1092 & n.10. In the footnote, we mentioned two Tenth Circuit cases that further support my position. In *United States v. White*, the Tenth Circuit held that a special condition barring White from "possess[ing] a computer with Internet access throughout his period of supervised release" was greater than necessary because it completely barred White from using a computer, even "to do any research, get a weather forecast, or read a newspaper online." 244 F.3d 1199, 1205–06 (10th Cir. 2001). The Tenth Circuit did not consider whether the condition imposed an absolute bar on White's First Amendment rights. And in *United States v. Walser*, the Tenth Circuit distinguished *White* and found permissible a special condition "barring his use of or access to the Internet without the prior permission of the United States

23-10266          JILL PRYOR, J., Dissenting in Part          9

But Etienne's special condition does impose an absolute bar on his access to the Fort Pierce and West Palm Beach federal courthouses and the James Lawrence King Courthouse in Miami and on his ability to call court facilities. Because it imposes this absolute bar, it unduly restricts his right to file lawsuits, even though the special condition does not absolutely bar that right. Under the proper test, the stay-away order is a greater-than-necessary restriction. Indeed, the stay-away order fails even the proper application of the test the majority opinion adopts.[3]

Although I agree with the majority opinion that the district court should be affirmed in part, I would vacate the stay-away order and remand to the district court on this condition. I respectfully dissent.

---

Probation officer" because "Walser is not completely banned from using the Internet. Rather, he must obtain prior permission from the probation office." 275 F.3d 981, 987–88 (10th Cir. 2001). We characterized Zinn's case as "virtually identical to" Walser's. *Zinn*, 321 F.3d at 1092 n.10. In both cases, the courts did not absolutely bar the restriction's subject. Etienne's case is closer to White's, in which the court *did* absolutely bar the restriction's subject.

[3] The majority opinion's reach, at least, is narrow. The Southern District of Florida permits litigants to file "at any division," so Etienne can file lawsuits at courthouses other than those listed in his stay-away order. S.D. Fla. Civ. Filing Requirements 2E. In other districts, however, that alternative is unavailable. The Middle District of Florida, for example, requires a party to file "in the division to which the action is most directly connected or in which the action is most conveniently advanced." M.D. Fla. Loc. R. 1.04(b). By failing to acknowledge that the Southern District of Florida's rule is not universal, the majority opinion appears to sweep more broadly than it should.