[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10486

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JAMAUL RAHEEM BOYCE,
a.k.a. Jamaul Boyce,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cr-00217-JPB-CCB-1

_____

Before BRANCH, LUCK, and WILSON, Circuit Judges.

PER CURIAM:

A jury convicted Jamaul Boyce of drug and firearm crimes. The district court sentenced him to 360 months in prison and a lifetime of supervised release. Boyce appeals his conviction and sentence on several grounds. For his conviction, he argues that the district court erred when it (1) denied his request for a *Franks* hearing, (2) admitted prejudicial evidence, and (3) gave the jury a concealment instruction. Boyce contends that, viewed cumulatively, these errors deprived him of a fundamentally fair trial. For his sentence, he argues that the district court imposed a substantively unreasonable term of imprisonment. After careful consideration, we affirm.

## FACTUAL BACKGROUND

Even before the conduct charged in this case, Boyce was a convicted felon with a long criminal history. In early 2019, he moved in with his girlfriend, Liva Alonso, and her three young children. Despite being on probation, Boyce made his living buying and selling illegal drugs—particularly methamphetamine and cocaine. When Boyce moved in with Alonso, he stashed his drugs—and several firearms—in her apartment.

In June 2019, the United States Marshals Service executed a probation-violation arrest warrant for Boyce at Alonso's apartment. The officers announced their presence, and Alonso met

them at the door. Alonso informed the officers that Boyce was in the apartment. The officers called for Boyce to come out, but he did not answer. With Alonso's permission, the officers entered the apartment, shouting for Boyce to surrender. While searching for Boyce, the officers observed a firearm and several suspected narcotics in plain view on a nightstand in the master bedroom.

The officers eventually found Boyce hiding in a bedroom closet. He was lying in a fetal position on the floor of the closet with his back to the door. The officers ordered Boyce to get up, but he did not comply. When the officers tried to arrest Boyce, a struggle ensued. Boyce was tased, subdued, and arrested.

One of the officers reported the firearm and drugs he observed in the apartment to the Clayton County Police Department. Later that day, a Clayton County detective submitted an affidavit based on the information conveyed by the officer. Based on this affidavit, the detective obtained a search warrant for Alonso's apartment. Clayton County deputies searched the apartment and discovered methamphetamine, cocaine, heroin, marijuana, various opioid pills, a pill press, two pistols, a smoke grenade, bullet proof vests, and an AR-15 rifle—in addition to other incriminating evidence. Deputies field-tested the methamphetamine, cocaine, and heroin on the scene. The methamphetamine and cocaine were later tested in a laboratory.

## PROCEDURAL HISTORY

Boyce was charged by superseding indictment with four counts: (1) possessing a firearm as a felon, (2) possessing a firearm

after a domestic violence conviction, (3) possessing methamphetamine and cocaine with intent to distribute, and (4) possessing a firearm in furtherance of a drug trafficking crime. *See* 18 U.S.C. §§ 922(g)(1), (9); 18 U.S.C. §§ 924(a)(2), (c)(1)(A)(1), (e); 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(C).

## *Motion for Franks Hearing*

Before trial, Boyce moved to suppress the evidence discovered at Alonso's apartment. He requested a *Franks* hearing, arguing that the affidavit filed by the Clayton County deputy in support of the search warrant contained material misrepresentations and omitted key information. *See Franks v. Delaware*, 438 U.S. 154 (1978). Specifically, Boyce contended that officer reports from his arrest conflicted regarding what illegal material was plainly visible in the apartment, and that the search warrant omitted these conflicts. After a response, a reply, a sur-reply, and a reply to the sur-reply, a magistrate judge issued a report recommending that the district court deny the motion without a *Franks* hearing.

The magistrate judge reasoned that, while there were variations in the items different officers noted, the reports did not contradict one another. The deviations between reports were reasonable given the vast number of illegal items strewn throughout the apartment; it made sense that officers would notice different things. Further, there was no evidence that the detective who filed the affidavit was aware of the different reports, let alone the alleged inconsistencies, when he submitted the search warrant application. Ultimately, the magistrate judge concluded that Boyce had not

made a substantial preliminary showing that the affiant detective deliberately or recklessly included or omitted information from his affidavit. Thus, Boyce was not entitled to a *Franks* hearing. Boyce objected to the magistrate judge's report, but the district court overruled his objections and adopted the report—denying Boyce's motion for a *Franks* hearing.

*Motion in Limine*

Boyce also filed a wide-ranging motion in limine to exclude several pieces of evidence from trial. As relevant to his appeal, Boyce sought to exclude: (1) any evidence concerning the field tests conducted on the drugs found in the apartment, (2) any evidence of the pills or pill press discovered in the apartment, and (3) any evidence of the smoke grenade found in the apartment. He argued the field tests were unreliable under Federal Rule of Evidence 702, and that the pills, pill press, and smoke grenade were both irrelevant and highly prejudicial under rules 402 and 403.

The government opposed Boyce's motion. Concerning the field tests, the government responded that it did "not intend to admit any evidence about the results of those field tests." However, the government argued that the pills and pill press were relevant to show Boyce's drug trafficking operation, and that the smoke grenade helped establish the required nexus for the charge that Boyce was using firearms in furtherance of drug trafficking.

The district court addressed the motion at a pretrial conference. The district court granted Boyce's motion concerning the field tests, without objection from the government. But the district

court denied the motion regarding the pills, pill press, and smoke grenade. During the conference, the government reaffirmed its stance: "[a]s for the heroin and the marijuana, they were field tested, but as [the district court has] already discussed we don't intend to admit any evidence of the field test or to say what those substances were."

## Trial

Boyce moved to sever the charges against him, and the district court bifurcated the trial into two phases. In the first phase, the jury considered the drug trafficking charges (Counts 3 and 4), and in the second phase it weighed the firearm charges (Counts 1 and 2).

During the trial, the government called one of the detectives who searched the apartment. On direct examination, the detective stated that he field tested the suspected methamphetamine found in the apartment. Boyce did not object. The government asked the detective whether field tests were accurate. He stated that they were not always accurate, and that the suspected drugs were sent to a lab for confirmation. Later, the detective stated that he suspected the powder in the apartment was cocaine, in part, because he field tested it. The government proceeded to ask the detective if he field tested the suspected crack cocaine, heroin, and marijuana found in the apartment. The detective testified that he had field tested the cocaine and heroin, but not the marijuana. Boyce did not object to any of these questions or responses. After the detective, the government called two forensic chemists as expert

witnesses. These chemists testified that the substances recovered from the apartment tested positive in a lab for cocaine, crack cocaine, and methamphetamine.

The government also introduced—over Boyce's objection—evidence of the pills, pill press, and smoke grenade found in the apartment. On the last day of trial, the government requested a concealment jury instruction. Boyce objected, but the district court overruled his objection, noting that the evidence of concealment—that Boyce was found hiding in the closet—was clear. Ultimately, the jury convicted Boyce on all four counts.

*Sentence Proceeding*

Prior to the sentence proceeding, the probation office prepared a presentence investigation report. This report detailed Boyce's history and characteristics, including his rough upbringing and the abuse he suffered from his mother. It calculated a guideline sentence range of between 420 months' imprisonment and life imprisonment. Boyce faced a mandatory minimum sentence of 240 months' imprisonment.

Boyce's counsel argued for the mandatory minimum sentence based on Boyce's age, rough upbringing, and the non-violent nature of the crimes. Boyce spoke for himself and proclaimed his innocence—notwithstanding the jury's determination. He blamed the system for his situation and refused to accept responsibility for his crimes. For its part, the government requested a sentence of at least 288 months' imprisonment—a downward deviation from the guideline recommendation. The government cited Boyce's age for

the variance, recognizing that he would be in his sixties when released.

The district court expressed surprise at the government's request for a downward variance. It called a recess to further consider the appropriate sentence. But even after the recess, the district court had not made up its mind. The district court scheduled a second sentence proceeding and requested that the parties brief the issue of sentencing disparities. At the second sentence proceeding, with the benefit of the parties' new briefs, the district court sentenced Boyce to 360 months' imprisonment and a lifetime of supervised release. The district court explained that while it had considered Boyce's mitigating evidence, it ultimately could not ignore the seriousness of the offenses and Boyce's extensive criminal history. The district court noted that while the sentence was above those requested by the parties, it was still sixty months below the low end of the guideline range. Boyce timely appealed.

## DISCUSSION

Boyce appeals his conviction and sentence. We address each of his arguments in turn.

### A. *The district court did not abuse its discretion by denying Boyce's motion for a Franks hearing.*

Concerning his conviction, Boyce first argues that the district court erred when it denied his motion for a *Franks* hearing. We review the denial of a *Franks* hearing for abuse of discretion. *United States v. Barsoum*, 763 F.3d 1321, 1328 (11th Cir. 2014). Under this standard "we must affirm unless we find that the district court

has made a clear error of judgment, or has applied the wrong legal standard." *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc).

An affidavit filed in support of a search warrant application is presumed valid. *Franks*, 438 U.S. at 171. To merit a *Franks* hearing, a defendant must make a "'substantial preliminary showing' that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause." *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006) (quoting *Franks*, 438 U.S. at 155–56). "[W]e will not overturn a district court's decision that omissions or misrepresentations in a warrant affidavit were not reckless or intentional unless clearly erroneous." *United States v. Reid*, 69 F.3d 1109, 1113 (11th Cir. 1995).

Boyce insists that he made a substantial preliminary showing that the affiant, Detective Williams, either recklessly included false statements or failed to include material information in his affidavit. Detective Williams was not present during Boyce's arrest, but applied for the search warrant based on information he learned from one of the officers who was. Detective Williams attested that several suspected illegal items were observed in plain view on a small table next to the bed in the apartment's master bedroom. These included a white substance believed to be cocaine, unidentified prescription pills, and a pistol. Boyce argues that Detective Williams's attestation is belied by the incident reports of other officers. He

contends that different officers described the scene in different ways, and that their reports conflict with one another. For example, he notes that one officer recounted that there was "suspected crack cocaine and a digital scale" on a nightstand. But a different officer observed "a pill bottle and small plastic bags which appeared to be narcotics" on a nightstand. Boyce contends that because Detective Williams did not acknowledge these "conflicting accounts" in his affidavit, he either recklessly included unsupported information, or recklessly omitted material information by failing to acknowledge the inconsistencies.

The district court denied Boyce's motion for a *Franks* hearing. It determined that the facts Boyce offered in support of his *Franks* motion did not satisfy his "burden to show that the affidavit supporting the search warrant was deliberately or recklessly false or otherwise omitted material information." The district court noted that it was reasonable for different officers to remember different things when they briefly observed a substantial quantity of illegal items. We agree.

First, it is not clear that Detective Williams knew of the other officers' incident reports when he submitted his affidavit. He submitted the affidavit the same day as Boyce's arrest, after receiving a phone call from one of the officers who participated in the arrest. Second, even assuming Detective Williams did know of the other officers' incident reports, the statements Boyce points to on appeal do not conflict with each other. Neither do they provide a substantial preliminary showing that Detective Williams recklessly

23-10486                Opinion of the Court                11

included or omitted material information.  *Arbolaez*, 450 F.3d at 1293.  As the district court noted, the minor differences between the officers' accounts were reasonable given the short time the officers were in the apartment and the large quantity of illegal material present.  The search warrant return makes clear that the apartment was a treasure trove of illegal items.  On the bedroom nightstands alone, officers discovered cocaine powder, various prescription pills, and a pistol.  Probable cause would still have existed even if Detective Williams noted the slight differences in the officers' reports.

In short, we are not persuaded that the district court abused its discretion by denying Boyce's motion for a *Franks* hearing.

B.  *The evidentiary rulings Boyce contests do not warrant reversal.*

Boyce contends that the district court should not have allowed testimony about the field tests, pills, pill press, and smoke grenade.  We review a district court's evidentiary rulings for abuse of discretion.  *United States v. Perez-Oliveros*, 479 F.3d 779, 783 (11th Cir. 2007).  However, when a party fails to object to evidence at trial, we review for plain error.  *United States v. Ahmed*, 73 F.4th 1363, 1380 (11th Cir. 2023).  Evidentiary decisions do not constitute reversible error unless they affect a party's substantial rights.  *See Frazier*, 387 F.3d at 1267 n.20.  Errors "affect a substantial right of a party if they have a 'substantial influence' on the outcome of a case or leave 'grave doubt' as to whether they affected the outcome of a case."  *Id.* (quoting *Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946)).

12                    Opinion of the Court                    23-10486

### 1. Field Tests

Boyce contends that the district court erred by allowing the government to question a detective about the field tests performed on substances found in the apartment. He argues that field tests are presumptive and unreliable. Before trial, the district court granted Boyce's motion to exclude evidence of the field tests—without objection from the government. However, Boyce failed to object to the field-test testimony at trial, so we review its admission for plain error. *See Ahmed*, 73 F.4th at 1380; *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1285 (11th Cir. 2000) ("Generally, a party must object to preserve error in the admission of testimony, *even when a party or a court violates an in limine ruling.*" (emphasis added)).[1]

To prevail, Boyce must establish that "the district court made an error that was plain and that affected his substantial rights." *United States v. Etienne*, 102 F.4th 1139, 1144 (11th Cir. 2024). An error is only plain if binding precedent (or a statute or rule) makes the error clear. *Id.* Further, even if Boyce establishes error, he must show that it affected the outcome of the case. *United States v. Innocent*, 977 F.3d 1077, 1083 (11th Cir. 2020). "If he does so, we may, in our discretion, correct the plain error if it 'seriously affect[s] the fairness, integrity, or public reputation of judicial

---

[1] While "a motion in limine… may preserve an error for appeal if a good reason exists not to make a timely objection at trial," Boyce has not shown a compelling reason for failing to object to the field-test testimony. *Frederick*, 205 F.3d at 1285.

proceedings.'" *United States v. Reed*, 941 F.3d 1018, 1021 (11th Cir. 2019) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)).

Boyce points to no binding authority that indicates the district court's allowance of the field-test testimony—without objection—was error. Neither has he shown "a reasonable probability that, but for the [field-test testimony], the outcome of [his trial] would have been different." *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016).

On the latter point, the record indicates that the introduction of the field-test testimony had little (if any) effect on the jury's verdict. When asked about field tests, the detective stated that they were not always accurate, and that due to this, the suspected illegal substances found in the apartment were sent to a laboratory for confirmation. The government later called two expert chemists who testified that the substances were evaluated in a laboratory and confirmed as methamphetamine, cocaine, and cocaine base. The indictment charged Boyce with possessing (and intending to distribute) methamphetamine and cocaine. So, even if allowing the mention of field tests was error, it would not have affected Boyce's substantial rights. In short, Boyce has not shown plain error regarding the field tests.

We are also not persuaded by Boyce's claim that the government was estopped from mentioning the field tests. In its reply to Boyce's motion in limine, the government stated that it "did not intend to admit any evidence about the results of [the] field tests." This is the stance it took at the pretrial conference.

Boyce argues in reply that the government promised more. At the conference, the government stated: "As for the heroin and the marijuana, they were field tested, but as you've already discussed, we don't intend to admit any evidence of the field test or to say what those substances were." But, viewed in context, it is clear the government was merely restating that it did not intend to offer the results of the field tests. It had said as much just a few minutes before this exchange. At trial, the government never elicited the results of the field tests and was careful to make sure that the jury understood that field tests were not always accurate.

"To make out a claim of estoppel against the [g]overnment, a party must adduce evidence of the following: (1) words, conduct, or acquiescence that induces reliance; (2) willfulness or negligence with regard to the acts, conduct, or acquiescence; (3) detrimental reliance; and (4) affirmative misconduct by the [g]overnment." *See United States v. McCorkle*, 321 F.3d 1292, 1297 (11th Cir. 2003).

Boyce has not shown that the government willfully or negligently broke its word, or that its actions amounted to affirmative misconduct. *Id.* Thus, he has failed to make a persuasive case for estoppel.

### 2. Pills and Pill Press

Boyce renewed his objection to the pills and pill press at trial, so we review the district court's decision to allow the testimony for abuse of discretion. *Perez-Oliveros*, 479 F.3d at 783.

The government called a detective who testified that he found several pills and a pill press while searching Alonso's

23-10486               Opinion of the Court                    15

apartment. The detective recounted that he looked up the labels of the pills online and suspected that they were amphetamine, buprenorphine, hydrocodone, and oxycodone. However, he made clear that he could not be sure that the pills were these drugs. The government introduced the pills and pill press into evidence over Boyce's objection. Boyce argues that this evidence was substantially more prejudicial than probative and that the district court abused its discretion by admitting it. *See* Fed. R. Evid. 403.

Boyce contends that the government presented no scientific evidence confirming the detective's suspicions that these pills were what he thought they were, or that they were even illegal. He argues that "allowing [the detective] to testify to his suspicions and characterizations of evidence based solely on online research was highly prejudicial, reversible error." He further asserts that owning a pill press is not illegal.

"Rule 403 is an 'extraordinary remedy' that the district court 'should invoke sparingly, and the balance should be struck in favor of admissibility.'" *United States v. Macrina*, 109 F.4th 1341, 1350 (11th Cir. 2024) (quoting *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002)). We review evidence challenged under rule 403 in the light most favorable to its admission and defer to the discretion of the district court on whether the probative value of the evidence is substantially outweighed by its prejudicial effect. *Id.* We will reverse a district court's determination only if the court clearly abused its discretion. *Id.*

16                    Opinion of the Court                    23-10486

Here, the district court did not abuse its discretion in allowing testimony about the pills and pill press. The evidence was relevant because it made the claim that Boyce was distributing drugs more probable. *See* Fed. R. Evid. 401; *Macrina*, 109 F.4th 1341 (noting that the standard for relevance is a low one); *United States v. Poole*, 878 F.2d 1389, 1392 (11th Cir. 1989) (explaining that "implements" commonly used in drug distribution can be used as circumstantial evidence). The detective's identification of the narcotics was grounded in his rationally based perception, and he made clear that he could not be certain that the pills were what he suspected. Boyce's argument that the detective's identification of the pills was unreliable goes more towards weight than admissibility. But even if it did not, he effectively pointed out the weaknesses of the detective's identification of the pills on cross examination—mitigating any prejudicial effect from their admission.

Because we are not persuaded that the pill evidence was substantially more prejudicial than it was probative, we find no abuse of discretion in the district court's overruling of Boyce's objection.[2]

### 3. The Smoke Grenade

Before trial, Boyce moved to exclude evidence of the smoke grenade found in Alonso's apartment, arguing that it was irrelevant

---

[2] Even if we found that the district court did abuse its discretion in allowing the evidence, we are not convinced its admission—considering the other evidence the government presented—would have affected Boyce's substantial rights. Thus, in either case, reversal is inappropriate. *See Frazier*, 387 F.3d at 1267 n.20.

and unfairly prejudicial.  The district court disagreed and ruled that the grenade was relevant to the possession of a firearm in furtherance of drug trafficking charge.  Specifically, the district court determined that the smoke grenade helped establish the nexus between the firearms and drug trafficking.  Boyce preserved his objection at trial and now appeals the district court's ruling.

We cannot say that the district court abused its discretion in allowing testimony about the smoke grenade.  We have previously referenced bullet proof vests as relevant for establishing the required nexus in a section 924(c) charge.  *See United States v. Timmons*, 283 F.3d 1246, 1253 (11th Cir. 2002).  A smoke grenade, like a bullet proof vest, is a tactical accessory.  Both items might reasonably be used in a well-armed drug operation.  Given that we have cited bullet proof vests as supporting the required nexus in the past, it was not an abuse of discretion for the district court to extend that reasoning to the smoke grenade.

Further, even if the smoke grenade was irrelevant, its introduction did not infringe Boyce's substantial rights.  Having reviewed the record, we are not persuaded that the smoke grenade had a "substantial influence" on the outcome of the case.  On the contrary, we have little doubt that the jury's verdict would have been the same even if it had been excluded.  *See Frazier*, 387 F.3d at 1267 n.20.

In short, the evidentiary rulings Boyce challenges do not provide sufficient grounds for reversal.

*C.  The district court did not abuse its discretion by giving a conceal-*
*ment instruction to the jury.*

Boyce argues that the district court erred in giving a conceal-
ment instruction to the jury.  "We review a district court's decision
to give a particular jury instruction for abuse of discretion."  *United
States v. Maxi*, 886 F.3d 1318, 1332 (11th Cir. 2018).  A jury instruc-
tion error is not grounds for reversal unless there is a "reasonable
likelihood" that it affected the defendant's substantial rights.  *United
States v. Williams*, 541 F.3d 1087, 1089 (11th Cir. 2008).

For a concealment instruction to be relevant, the jury must
be able to draw four inferences.  *See United States v. Ware*, 69 F.4th
830, 853 (11th Cir. 2023).  Adjusted to Boyce, these inferences are
that:  (1) Boyce hid, (2) he hid because he had a guilty conscience,
(3) he had a guilty conscience because of the crimes charged, and
(4) he had a guilty conscience because he was guilty of the crimes
charged.  *Id.*  Boyce contends that a jury could not have made the
second or third required inferences.

The government put forward sufficient evidence to support
the concealment jury instruction.  Concealment, in and of itself, is
evidence concerning consciousness of guilt.  *See United States v.
Wright*, 392 F.3d 1269, 1277 (11th Cir. 2004).  When the police an-
nounced themselves at Alonso's apartment and called for Boyce to
come out, he did not respond.  Instead, he hid.  He went into the
bedroom closet and crouched into a fetal position on the floor.
Boyce did not answer the officers' shouts to present himself, and

when they eventually found him in the closet, he refused to cooperate.

Given the amount of illegal material in the apartment—and Boyce's reaction to the arrival of the police—a jury could have easily made the two inferences Boyce disputes:  Boyce hid because he realized he had been caught red-handed with the large amount of illegal material in the apartment.  Thus, we cannot say that the district court abused its discretion in reading the instruction.

Even if this were not the case, the instruction itself mitigated any prejudice.  The district court informed the jury that concealment was not sufficient to establish guilt, that it was free to determine whether concealment had occurred, and if so, what weight to attach to it.  The district court also reminded the jury that there were reasons a person may hide that are fully consistent with innocence, such as a "fear of being apprehended, [an] unwillingness to confront the police, or [a] reluctance to confront the witness."  Given this, we are not persuaded there was a "reasonable likelihood" that the concealment jury instruction affected Boyce's substantial rights.  *Williams*, 541 F.3d at 1089.

### D. Boyce has not shown cumulative error.

Boyce's last argument to overturn his conviction is that he was denied a fundamentally fair trial under the cumulative error doctrine.  "'The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal.'"  *United States v.*

*Mosquera*, 886 F.3d 1032, 1052 (11th Cir. 2018) (citation omitted). Boyce was not denied a fundamentally fair trial. As explained above, Boyce's arguments fail to show *any* error in the district court's determinations—let alone cumulative error.

### E. Boyce's sentence was not substantively unreasonable.

Finally, Boyce argues that his sentence was substantively unreasonable. He contends that the district court imposed a sentence that was greater than necessary because it did not consider his history and characteristics. He highlights his abusive childhood, lack of education, and struggle to find employment after obtaining a criminal record at an early age. Boyce also notes the nonviolent nature of his crimes, and that both parties requested a lower sentence. Lastly, he asserts that similar offenders received lesser sentences.

We review the substantive reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). "That familiar standard allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *United States v. Irey,* 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (internal quotation marks omitted). A district court must impose a sentence that is "sufficient, but not greater than necessary," to reflect the seriousness of the offense, deter criminal conduct, protect the public, and rehabilitate the defendant. 18 U.S.C. § 3553(a)(1)–(2). A sentence is substantively unreasonable if it "(1) fails to afford consideration to relevant factors [listed in section 3553] that were due significant weight, (2) gives significant

weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Irey*, 612 F.3d at 1189.

We will only vacate a sentence if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the [section] 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (citation and internal quotation marks omitted). A sentence within the guideline range and below the statutory maximum is ordinarily expected to be reasonable. *See United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014) (explaining that a sentence within the guideline range and below the statutory maximum suggests reasonableness); *see also United States v. Dougherty*, 754 F.3d 1353, 1364 (11th Cir. 2014) (explaining that a sentence below the statutory maximum is an indicator of reasonableness). "The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the [section] 3553(a) factors." *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

Boyce's offenses carried a mandatory minimum sentence of 240 months' imprisonment. Boyce requested a sentence of 240 months, while the government asked for 288 months. The guideline sentence range was between 420 months' imprisonment and life imprisonment. After adjourning the hearing to further weigh the appropriate sentence, the district court ultimately

pronounced a below-guideline sentence of 360 months' imprisonment followed by a lifetime of supervised release.

Despite Boyce's contentions, the record shows that the district court carefully weighed the mitigating factors Boyce highlights. The district court noted that it had considered the section 3553 factors, Boyce's history and characteristics, the nature of his offenses, and the need to avoid sentencing disparity. The district court specifically mentioned the abuse Boyce had suffered at the hands of his mother, his rough childhood, mental illnesses, dependents, family support, and age. However, the district court ultimately could not overlook the nature and seriousness of Boyce's crimes. It noted the large number of drugs and weapons found in the apartment—which Boyce shared with young children—and the suffering of Boyce's drug-abusing victims. The district court also cited Boyce's long criminal history and refusal to accept responsibility for his actions.

"In explaining the sentence, the district court should set forth enough information to satisfy the reviewing court of the fact that it has considered the parties' arguments and has a reasoned basis for making its decision," but nothing "requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." *United States v. Kuhlman*, 711 F.3d 1321, 1326 (11th Cir. 2013) (cleaned up). Here, the district court did more than enough. It weighed the facts of the case and imposed a sentence sixty months below the guideline recommendation. We cannot say we are "left

with [a] definite and firm conviction that the district court committed a clear error of judgment." *Irey*, 612 F.3d at 1190.

Boyce has not carried his burden to show that the district court abused its discretion, or that his sentence was substantively unreasonable.

## CONCLUSION

Boyce has not shown any errors that merit the reversal of his conviction or the vacation of his sentence.

**AFFIRMED**.